**KNOX–TENN RENTAL CO.,**
**Plaintiff/Appellant,**

v.

**JENKINS INSURANCE, INC., et al.,**
**Defendants/Appellees.**

Supreme Court of Tennessee,
at Knoxville.

July 5, 1988.

**34**

Ronald L. Grimm, Philip P. Durand, Stephen W. Gibson, Ambrose, Wilson, Grimm and Durand, Knoxville, for plaintiff/appellant.

David E. Smith, Frank Q. Vettori, Fred H. Cagle, Jr., Richard L. Hollow, D. Michael Tranum, Knoxville, for defendants/appellees.

## OPINION

O'BRIEN, Justice.

We granted this appeal to clarify certain issues raised at the trial level and considered by the Chancellor in dismissal of the cause at the conclusion of the plaintiff's proof.

Knox–Tenn Rental Company filed a complaint against Jenkins Insurance, Inc., and its owner, Ronald Jenkins, as principal defendants; his wife, Sandra Jenkins, Robert Lowe an officer of Jenkins Insurance Agency, three other corporations which Jenkins owned or in which he was substantially involved and three major insurance companies for which Jenkins Insurance acted as agent. Various defendants filed cross-complaints against other defendants and third-party claims against Charles Carte, a former Vice–President and General Manager of Knox–Tenn.

The charge in the complaint was that the Jenkins Insurance Company, its officers and directors, negligently and fraudulently misrepresented the amount of insurance premiums paid by Knox–Tenn over a long period of time resulting in enormous overcharges throughout the years for insurance coverage purchased by the plaintiff for its general business operations. Traveler's Insurance Company, Insurance Company of North America, and Home Insurance Company were made party defendants as principals of Jenkins Insurance Company and liable for its acts as their agent under the provision of T.C.A. § 56–6–124.

The Chancellor found that Charles Carte, in his capacity as an officer and manager of the plaintiff corporation was allowed complete and total control over the corporate business. For a period of time from 1977 to 1984 he entered into a tortious conspiracy with Ron Jenkins and Jenkins Insurance Agency to over-bill for insurance premiums owed by the plaintiff to Jenkins. The amount of the over-billing over the period of time in question involved several hundred thousands of dollars. The scheme was discovered in early 1984, Mr. Carte was discharged by plaintiff and this suit was brought.

Prior to initiation of the complaint a mutual release was entered into by Mr. Carte and Edward R. Cowan, individually and as President of Knox–Tenn Rental Company, whereby Carte released Knox–Tenn from any and all claims for accrued salaries, employee benefits, income, insurance, etc., due to him prior to 20 March 1984, the date of the release. Knox–Tenn in turn released Carte, waiving any and all claims arising out of his employment with the company and Cowan released and waived any claims he personally had against Carte. Each of the defendants raised in defense the effect of the mutual release entered into between Carte and the plaintiff corporation.

The Chancellor found that Charles Carte was a fiduciary in his position with the plaintiff. That T.C.A. § 29–11–102(g) of the Tennessee Contribution Among Tortfeasors Act provides that the chapter does not apply to breaches of trust or other fiduciary obligations and so the release of Mr. Carte triggered the common law rule and released all joint tort-feasors, specifically the Jenkins Agency and associated Jenkins defendants. He dismissed the suit against all defendants, including Carte who had been sued for indemnity by the major defendant insurance companies.

Looking to the issues raised here in the order we think best facilitates their resolution, the appellant questions (1) whether the trial court erred in his determination of what was within the contemplation of the release from plaintiff to Charles Carte; (2) whether the trial court erred in designating Carte as a fiduciary of the plaintiff; (3) whether the trial court erred in its interpretation and application of the Tennessee Contribution Among Tort–Feasors Act; (4) whether the trial court erred in holding contributory negligence to be a defense to fraud and deceit.

## I.

### THE RELEASE OF CHARLES CARTE BY PLAINTIFF

Knox–Tenn Rental Company was a closely held corporation. Ed Cowan inherited the company and owned ninety-five percent (95%) of the stock. The other five percent (5%) had been transferred years before as a gift to his wife. The relationship between the Cowans and Charles Carte was a close and personal one of many years standing. He had stood in loco parentis to the Cowans' children over a period of years when Mr. Cowan was suffering from severe depression. He had been a trusted employee of Knox–Tenn for more than twenty (20) years. In early 1984 three other employees of Knox–Tenn, alarmed by evidence that Carte had been stealing from the Company, informed Mrs. Cowan of these facts. At the time his defalcation was discovered he was Vice–President and General Manager of the Company and for all practical purposes he had been in complete charge of the business since the early 1970's when Mr. Cowan's illness first manifested itself. The Cowans fired Carte and initiated an audit and an investigation to determine the extent of his embezzlement. This investigation revealed, among other things, a pattern of theft by Carte based on overpayments of insurance premiums to Jenkins Insurance Company. The money was allegedly returned by Jenkins to Carte for the benefit of Cowan. The investigation also revealed that Carte had allowed his unpaid salary to accumulate to nearly $100,000 while at the same time he was taking unauthorized bonuses. There is some evidence that the Cowans also believed that the monies stolen by Carte totaled approximately that amount. Shortly after the discovery, on 20 March 1984, prior to the time that the investigation of the Company accounts was completed, the Cowans entered into a mutual release agreement with Carte which was prepared by plaintiffs' counsel and reads as follows:

### MUTUAL RELEASE

THIS AGREEMENT made this the 20th day of March, 1984 by and between Charles W. Carte, hereinafter referred to as "Carte"; Knox–Tenn Rental Company, a Tennessee Corporation, hereinafter referred to as "Knox–Tenn", and Edward R. Cowan, hereinafter referred to as "Cowan", all of Knox County, Tennessee.

WITNESSETH:

WHEREAS, Carte has for several years prior to February 13, 1984 been an employee and officer of Knox–Tenn, and

WHEREAS, on February 13, 1984 Carte was relieved of his duties as an employee, Vice President and General Manager of Knox–Tenn, and

WHEREAS, Carte has resigned from Knox–Tenn as an employee and officer effective February 13, 1984, and

WHEREAS, as a result of Carte's termination and resignation Knox–Tenn, Carte and Cowan do hereby agree as follows:

1. Carte hereby releases Knox–Tenn and Cowan from any and all claims and waives any accrued salary, employee benefits, income, insurance or other employment benefits due from Knox–Tenn and not received to date.

2. Knox–Tenn hereby releases and waives any claims it has against Carte arising out of the employment of Carte by Knox–Tenn or otherwise, and Cowan hereby releases and waives any claims he has against Carte.

The consideration for releases of the parties hereto and the waiver of claims is

the mutual release granted to each party by this Agreement.

This the day and date first about [sic] written.

■ We find on this issue, as did the Court of Appeals with whom we are in complete accord, that it is clear from the record Mr. Cowan intended the release to be full, final and complete as to Carte. As the Court of Appeals noted it is probably true that Mr. Cowan did not know the full extent of Mr. Carte's perfidy, but he did know that the question of insurance premiums was involved prior to signing the release and had sufficient information to put a reasonably prudent person on notice that further inquiry was dictated. His trial testimony was positive to the effect that he knew what he was signing when he entered into the agreement and did it knowingly and intentionally. There was no question in his mind that the agreement was intended to release Carte from whatever liability there was, whether it was small or large.

Intent to release Carte from all claims is further evidenced by the fact that there has been no attempt to rescind the release or bring action against Carte for those claims which the plaintiff now contends were not contemplated. It is argued that when the release to Carte was executed neither the full nature nor the magnitude of the insurance premium scheme was known to the plaintiff nor was the involvement of Carte in the insurance scheme known or even imagined. The evidence is to the contrary. Whether or not it was contemplated that Jenkins had collaborated with Carte to overcharge Knox–Tenn for insurance premiums through fraud and deceit is a matter for later discussion in this opinion.

## II.

## THE TRIAL COURT'S FINDING THAT CARTE WAS A FIDUCIARY OF THE PLAINTIFF

The trial court found that Charles Carte, as Manager and person in charge of the operations of Knox–Tenn, was in complete control of the corporation and there was no question that he was acting in a fiduciary capacity. Appellant insists this finding was erroneous and was based on decisions which pre-dated the enactment of the Tennessee General Corporation Act in 1968. The theory is propounded that within the statutory scheme of that act the standard of care demanded of officers of a corporation requires only two elements, that of good faith, and a degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions. It is argued that good faith is defined as honesty-in-fact and therefore is far too pervasive in the law to rise to the level of a traditional fiduciary duty. The further effort is made to persuade us that the "degree of diligence, care and skill of ordinarily prudent men in like positions" is also too widespread to be equated with fiduciary and in essence is no more than the duty of reasonable care.

■ In a broad sense, the directors and officers of a corporation are its agents. While they may not be in a strict sense trustees, it is well established that they occupy a fiduciary, or more exactly a quasi-fiduciary, relation to the corporation and its stockholders. 18B Am.Jur.2d, Corporations, § 1689, p. 541. An agent is a fiduciary with respect to the matters within the scope of his agency. The very relationship implies that the principal has reposed some trust or confidence in the agent and the agent or employee is bound to the exercise of the utmost good faith, loyalty, and honesty toward his principal or employer. 3 Am.Jur.2d Agency, § 210, p. 713. The correct rule on the status of a corporate officer as a fiduciary is found in *Hayes v. Schweikart's Upholstering Co.,* 402 S.W.2d 472, 483, 55 Tenn.App. 442 (1965), citing from 19 C.J.S. p. 107, as follows:

"A corporate officer must at all times be loyal to his trust and act in good faith and unselfishly toward the corporation and its stockholders, and cannot assume positions in conflict with the interests of the corporation; but the restrictions on their activities growing out of the fiduciary status extend only to such corporate interests as exist at the time or may

reasonably be expected in the development of the corporate business. If the officers transcend or abuse their powers, they are as much responsible to their principal as the agent of an individual is to him."

"A mere employee does not ordinarily occupy a position of trust or confidence toward the corporation unless he is also its agent. On the other hand, one employed as manager of a corporation under the control and direction of the president and board of directors has been held to be an employee in a quasi fiduciary capacity, and, as such, bound to protect the interests of his employer." Vol. 19 C.J.S. Corporations § 761b, page 107.

■ We do not believe appellant seriously argues that the foregoing provisions of the Tennessee General Corporation Act, particularly T.C.A. § 48–1–813 [1] delineating the duty of directors and officers, authorizes or condones the fraudulent conduct engaged in by Mr. Carte who was undoubtedly a fiduciary. There is nothing in the General Corporation Act as it existed at the time these acts occurred, or in its revised provisions, (T.C.A. § 48–18–403(3)) to suggest that Carte was acting in good faith or in a manner he reasonably believed to be in the best interest of the corporation.

### III.

### THE TRIAL COURT'S INTERPRETATION AND APPLICATION OF THE TENNESSEE CONTRIBUTION AMONG TORT-FEASORS ACT

To adopt the language of appellant the lower court interpreted T.C.A. § 29–11–102(g) of the Act to mean that where a "breach of trust or other fiduciary obligation" is involved, the Uniform Act does not apply, thereby reinstating the common law rule with the effect that the release of one joint tort-feasor releases all. The court also held that the participation of Carte and Jenkins in overcharging insurance premiums to the plaintiff made them liable as joint tort-feasors. That this liability was fundamentally tortious not contractual in nature and resulted in the release of the Jenkins Agency and the associated Jenkins defendants.

■ We agree with the appellant's argument that this interpretation of the act is too simplistic. In reading and applying the Act, it is necessary to look to subsection (g) of § 102 with a view to arrive at the true intention of each section and the effect to be given, if possible, to the entire Act. See *Bible and Godwin Construction. Co., Inc. v. Faener Corporation,* 504 S.W.2d 370, 371 (Tenn.1974). The Act plainly and clearly applies to negligence and tort cases where there is injury to person or property, including wrongful death. It is plain and clear that it applies exclusively to the right of contribution among individuals liable for such acts of negligence, and nowhere within its text is there any reference to the right of a claimant to pursue a cause of action against any others who may be liable for an injury he has sustained after having released one or more other tort-feasors of liability unless it can be found in T.C.A. § 29–11–105. Moreover there is a paucity of case law in this State, as well as in other jurisdictions regarding the exclusion of breaches of trust or fiduciary obligations from the operation of the Act.

In *Buchbinder v. Register,* 634 F.2d 327 (1980) the 6th Circuit Court of Appeals concurred in the finding of the Federal District Court in a suit against a joint tort-feasor, specifically filed under the Tennessee Uniform Contribution Among Tort-Feasors Act, where the plaintiff apparently had settled with the executor of an estate trust for less than the full amount he had misappropriated from the trust. She then sued an accounting firm charging negligence in preparation of the executor's tax forms and aiding and abetting the executor in his scheme to defraud the remaindermen of their interests in the trust funds.

It was held that the Uniform Act did not apply in actions involving breached fiduci-

---

1. Since repealed by Public Acts of 1986, Chapter 887, § 17.05 and Acts 1987, Chapter 242, § 18.05, effective January 1, 1988.

ary relationships and the suit could not be maintained. *Buchbinder* must be confined to its facts and is of little assistance in resolving the issues in the case under consideration.

The nearest rationalization of the issue we have found is in *Eason v. Lau*, Fla. App., 369 So.2d 600 (1978). In that case an action was brought to recover for tort involving, inter alia, a breach of trust or fiduciary obligation. The trial court found that a Florida statute (F.S. § 768.041) abrogated the common law rule that a voluntary dismissal with prejudice of the action against one defendant was tantamount to a release discharging the other defendants. The Florida Court of Appeals affirmed. F.S. § 768.041 provides in material part:

"A release or covenant not to sue as to one tort-feasor for property damage to, personal injury of, or the wrongful death of any person shall not operate to release or discharge the liability of any other tort-feasor who may be liable for the same tort or death."

In making its ruling the Court noted: (1) The Florida legislature adopted the Uniform Contribution Among Tort-feasors Act verbatim; and (2) The similarity in subject matter treated in F.S. § 768.041(1) and subsection F.S. § 768.31(5) of their Uniform Contribution Act.

Pertinent to our investigation here the Court stated:

"It syllogistically follows, therefore, that if the tort charged sub judice involved breach of trust or other fiduciary obligation and that F.S. 768.31 (the Uniform Contribution Among Tortfeasors Act) is not applicable to breaches of trust or other fiduciary obligation and if 768.041 is applicable to all torts, as held by the Supreme Court ..., then the conclusion is inescapable that F.S. 768.31 is inapplicable and F.S. 768.041 is controlling. F.S. 768.041 being controlling, the common law rule is inapplicable; therefore the release of ... [one tort-feasor] did not operate as a release or discharge of the other joint tortfeasors."

The reasoning utilized by the Florida court can be found within the parameters of T.C.A. § 29–11–101, et seq. The provisions of T.C.A. § 29–11–105, relative to the effect of a release or covenant not to sue upon the liability of other tort-feasors take preeminence over Section 29–11–102(g) excluding breaches of trust or other fiduciary obligations from application of the Act.

T.C.A. § 29–11–105 provides:

**29–11–105. Effect of release or covenant not to sue upon liability of other tort-feasors.** (a) When a release or covenant not to sue or not to enforce judgment is given in good faith to one (1) of two (2) or more persons liable in tort for the same injury or the same wrongful death:

(1) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

(2) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

(b) No evidence of a release or covenant not to sue received by another tort-feasor or payment therefor may be introduced by a defendant at the trial of an action by a claimant for injury or wrongful death, but may be introduced upon motion after judgment to reduce a judgment by the amount stipulated by the release or the covenant or by the amount of the consideration paid for it, whichever is greater.

In *Bible and Godwin Construction Co.*, supra, in construing T.C.A. § 23–2102(f) [T.C.A. § 29–11–102(f) ] in conjunction with T.C.A. § 23–3104(f) [T.C.A. § 29–11–104(f) ] the Court stated the rule on the construction of statutes as follows:

"In construing T.C.A. § 23–3104(f), which is a part of Chapter 575, enacted by the Legislature as one Act, we examine the entire Act with a view to arrive at the true intention of each section and the effect to be given, if possible, to the entire Act and every section thereof. Where different sections are apparently

in conflict we must harmonize them, if practicable, and lean in favor of a construction which will render every word operative. (Citations omitted).

When there is an irreconcilable conflict between statutes we have to rely on an established rule of statutory construction; that is, where there is such conflict between two sections of a statute the one last mentioned will control. (Citations omitted).

In *Yett v. Smoky Mountain Aviation, Inc.*, 555 S.W.2d 867 (Tenn.App.1977) it was made clear that T.C.A. § 23–3105 [T.C.A. § 29–11–105] applies to all tort-feasors and not just those jointly liable. The case citing from *Layne v. United States*, 460 F.2d 409 (9th Cir.1972), throws some further light on the common law release rule:

"*Layne* misapprehends the purpose and effect of § 4 of the Uniform Act. While § 4 changed the common law in one respect (i.e., by providing that release of one joint tortfeasor does not automatically release the other joint tortfeasors), it retained that part of the common law rule embodying the sound public policy of permitting a plaintiff to receive only the amount of his adjudged damages and no more, regardless of the source of the recovery. Since the principle is that there can be but one satisfaction for the same injury, whether or not the released party is in fact jointly liable with the defendant against whom a judgment is rendered is not relevant. In either case, to prevent recovery by plaintiff of more than his legitimate damages, 'the amount paid for the release or covenant not to sue must reduce *pro tanto* the injured person's judgment against another....' "

As a result, it makes little difference if Carte is or is not found to be a fiduciary under T.C.A. § 29–11–102(g). The strictures of T.C.A. § 29–11–105 clearly compel the conclusion that neither Ronald Jenkins nor his associated defendants are entitled to a release by virtue of the findings of the trial court that they were joint tort-feasors.

We are compelled however to take still another view of this matter. We are of the opinion the trial court erred in finding that the liability of Jenkins and Carte was confined solely to a tort claim, and not alternatively contractual in nature. While that may have been true as to Carte, the evidence introduced at trial clearly shows that Ron Jenkins, as well as Carte, was acting in a fiduciary capacity. The record confirms they were both close and trusted friends of Mr. Cowan. Jenkins himself testified that Cowan, many years before, had loaned him the money to begin his insurance business and he had serviced both Knox–Tenn's insurance needs as well as Cowan's personal insurance since that time. Unquestionably this was a contractual relationship between the plaintiff on one hand and Ronald Jenkins and the Jenkins Insurance Company, Inc. on the other, whereby Knox–Tenn Rental Company contracted with Jenkins to provide it with policies of insurance on its business operations.

This suit was based primarily on the fraudulent acts of Ronald Jenkins and his associated companies, agencies and employees in overcharging for insurance premiums in excess of half a million dollars over a period of time. This can be considered as nothing less than common fraud based on the contractual relationship which existed between them. The possibility that he may have, as he testified, entered into a conspiracy with Charles Carte to consummate the fraud in no way vitiates the fundamental evil of his actions.

The general rule is that if parties to a fraud are in pari delicto the law will leave them where it finds them. The principle of contribution does not apply. Where the parties to a suit have been guilty of fraud in connection with the subject matter of litigation and are in pari delicto, the court of equity, in the application of the principle of unclean hands, will leave them as it finds them, refusing its aid to either. See 37 Am.Jur.2d § 303, Fraud and Deceit, p. 400. As this Court said in *New York Life Insurance Co. v. Nashville Trust Co.*, 292 S.W.2d 749, 754, 200 Tenn. 513 (1956), "we cannot imagine how acts could be more fraudulent." Citing from *Smith v. Harrison*, 49 Tenn. 230 (1871),

the court addressed the issue in these words:

"Fraud vitiates and avoids all human transactions, from the solemn judgment of a court to a private contract. It is as odious and as fatal in a court of law as in a court of equity. It is a thing indefinable by any fixed and arbitrary definition. In its multiform phases and subtle shapes, it baffles definition. It is said, indeed, that it is part of the equity doctrine of fraud not to define it, lest the craft of men should find ways of committing fraud which might evade such a definition. In its most general sense, it embraces all 'acts, omissions, or concealments which involve a breach of legal and equitable duty, trust or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.' (Citations omitted). A judicial proceeding in rem, while generally binding upon all persons, is no more free from the fatal taint of fraud than a proceeding in personam, or an individual contract. When once shown to exist, it poisons alike the contract of the citizen, the treaty of the diplomat, and the solemn judgment of the court."

■ We hold that the evidence adduced in the trial court clearly shows that Ronald Jenkins, utilizing the facilities of his insurance agency and associated corporations and companies, engaged in acts of unconscionable common fraud against the plaintiff which entitled it to recover from these defendants. The fact that he engaged in these fraudulent acts through a conspiracy with Charles Carte does not alter his liability to the plaintiff any more than does the release entered into between Carte and the plaintiff. According to the evidence they were co-conspirators involved in a scheme to defraud the plaintiff. In such a case they are protected neither by law or by equity and the courts will leave them where they find them. See Gibson Suits in Chancery, Crownover, 5th Edition, 1955, § 60, p. 74. Plaintiff was entitled to proceed against Jenkins for the violation of the fiduciary relationship which existed between them regardless of the release of any other participant who may have made the fraudulent conduct possible.

## IV.

### DISMISSAL OF TRAVELERS' INSURANCE COMPANY, INA, AND HOME INSURANCE COMPANY AS DEFENDANTS

Plaintiff sued these defendants alleging that the acts of negligence, wrong doing, misrepresentation and fraud on the part of Jenkins Insurance was imputable to them as principals by virtue of their authorization of Jenkins to act as their agents for the purpose of selling their insurance policies to plaintiff. The Chancellor dismissed the insurance company defendants on the equitable premise that they had no knowledge of the scheme contrived by Jenkins and Carte and on the theory that the plaintiff corporation and the Cowans had information available to them which would have prevented the loss occasioned through the fraudulent scheme which occurred. The plaintiff insists that since contributory negligence is not a defense to an intentional tort such as fraud that these defendants should not have been dismissed from the lawsuit.

■ While we have no argument with the equitable theory upon which the Chancellor dismissed the suit against these defendants we think a further, more satisfactory reason why these defendants should not be held liable is stated more succinctly in 3 Am.Jur.2d Agency, § 80, p. 587, as follows:

In order to establish that an agent had the apparent authority to do the act in question, it must be established (1) that the principal has manifested his consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority; (2) that the third person knew of the facts and, acting in good faith, had reason to believe and, did actually believe, that the agent possessed such authority; and (3) that the third person, relying on such appearance of authority, has changed his position and will be injured or suffer loss

if the act done or transaction executed by the agent does not bind the principal."

This rule was followed in substance in *Umstattd v. Metropolitan Life Insurance Co.*, 110 S.W.2d 342, 21 Tenn.App. 312 (1937) and we are satisfied it states the law correctly as it exists in this State.

Insofar as the theory of contributory negligence is concerned it is unrefuted in the record that Mr. Cowan the principal stockholder in Knox–Tenn Rental Company had been suffering from emotional illness for some period of time. He had implicit faith and placed his trust and confidence in both Charles Carte and Ronald Jenkins. He was grooming Carte to take over the reins of Knox–Tenn Rental Company and trusted Jenkins to the extent that he left his insurance policies in his possession during the time in question that the fraudulent thievery took place.

In accordance with this opinion the judgment of the trial court dismissing the suit against Traveler's Insurance Company, Insurance Company of North America, and Home Insurance Company is affirmed. The judgments dismissing the suit against all other defendants except Sandra Jenkins and Travel Management, Inc., are overruled and reversed. The case is remanded for appropriate proceedings in accordance with this opinion. The costs of this appeal are assessed against Knox–Tenn and its sureties.

HARBISON, C.J., and FONES, COOPER and DROWOTA, JJ., concur.