903 P.2d 708

**Lucrecia F. COOK and Augustine S. Cook, husband and wife, Plaintiffs–Appellants,**

v.

**SURETY LIFE INSURANCE, COMPANY, a foreign corporation and Hilton Hotels Corporation, a foreign corporation, Defendants–Appellees.**

No. 15498.

Intermediate Court of Appeals of Hawai'i.

Aug. 28, 1995.

As Amended Aug. 30, 1995.

John S. Carroll and Jeffry R. Buchli (Carroll, Smith & Buchli, of Counsel), Honolulu, and Melvin Caesar Belli (Belli, Belli, Brown, Monzionne, Fabbro & Zakaria, of Counsel), San Francisco, CA, for plaintiffs-appellants.

Shelton G.W. Jim On and Henry F. Beerman (Jim On & Beerman, of Counsel), on the brief, Honolulu, for defendant-appellee Hilton Hotels Corp.

David J. Dezzani and Roy J. Tjioe (Goodsill Anderson Quinn & Stifel, of Counsel), on the brief, Honolulu, for defendant-appellee Surety Life Ins. Co.

Before ACOBA and KIRIMITSU, JJ., and PERKINS, Circuit Judge in place of WATANABE, J., Recused.

ACOBA, Judge.

Plaintiff–Appellant Lucrecia F. Cook (Lucrecia) and her husband Plaintiff–Appellant Augustine S. Cook (Augustine) (collectively, Appellants) appeal an order granting motions to enforce settlement agreements, contending that their attorney did not have authority to settle on their behalf. We vacate the order and remand the case.

## I.

Appellants initiated this case on October 17, 1988 alleging negligence by Defendant–Appellee Hilton Hotels Corporation (Hilton) and Defendant–Appellee Surety Life Insurance Company (Surety) (collectively Appellees) and seeking damages for a broken ankle sustained by Lucrecia and for loss of consortium claimed by Augustine. Lucrecia was injured during a "tug-of-war" game at a convention sponsored by Surety and held at the Kauai Hilton Hotel.

In their answers to the complaint, Appellees filed cross-claims against each other alleging that if Appellants did sustain damages then it was the fault of the other Appellee, and even if negligent, each was entitled to indemnification by or contribution from the other.

Appellees filed motions for summary judgment and the motions were granted on December 20, 1989 and August 7, 1990. On August 28, 1990, Appellants only appealed the summary judgment order in favor of Surety. Citing the lack of appellate jurisdiction because a final judgment had not been filed in the case, the Hawai'i Supreme Court dismissed the appeal on March 14, 1991.

During the pendency of the appeal, the parties engaged in settlement negotiations. According to Appellees, an agreement was reached with Appellants' local attorney John Carroll (Attorney). Surety claims it reached an agreement with Attorney on September 27, 1990 and subsequently transmitted a letter confirming the agreement with a check in the sum of $4,000.00 and related documents to him. Hilton claims it reached an agreement with Attorney on October 9, 1990, and thereafter, delivered a check for $1,000.00 and related documents to Attorney. Hilton prepared a Stipulation for Dismissal with Prejudice of All Claims "[p]ursuant to Rule 41(a)(1)(B) of the Hawaii [Hawai'i] Rules of Civil Procedure" to be signed by all parties. Appellants, however, never cashed the checks or executed the documents. They did not do so because they claim that Attorney did not have authority to settle the case on their behalf.

On November 30, 1990, Surety filed its Motion to Strike [the] Notice of Appeal [filed August 28, 1990] and to Compel Compliance with Settlement and Hilton filed its Motion to Enforce Settlement and to Dismiss Case with Prejudice (collectively "the motions"). Surety moved to compel compliance with the settlement agreement, to strike the notice of appeal, and for attorney fees and costs. Hilton moved to enforce the settlement agreement, to dismiss all claims brought by Appellants against Hilton, to dismiss the notice of appeal filed against Surety, and for attorney fees and costs. Hearings on the motions were held on December 7, 1990 and May 9, 1991. Evidence was not received by the court, but it did question Attorney regarding his authority to settle. Finding that Attorney had authority to act because of information he had received from co-counsel, the

court orally ruled in favor of Appellees on May 9, 1991 as follows: [1]

> This court reviewed the tape of the previous hearing and at approximately 8:51 on that tape, you, Mr. Carroll, stated, in part, that you were told by Mr. Belli to send the docs and check that he thought she was convinced [2]. . . .
>
> Attorney: Correct.
>
> The court: Okay. And Belli said to you looks like its a go deal and that you got the impression from mainland counsel that it was approved. And you indicated that Belli's office said that we'll do this. Send the documents up here. Then that indicates to the court and looking at the plain language, that in fact, and anyone else would get the impression that a settlement was had. Now perhaps if Belli, perhaps they're putting you in the middle, but if Belli firm did not get authority proper authority then perhaps he should be sanctioned and the ultimate sanction perhaps from his client is a suit for malpractice.
>
> This court feels under the circumstances that it was a representation by counsel that there was a settlement in both instances. Therefore, the court will grant the motion to enforce the settlement as to both cases.

(Footnote added.) The order granting the motions (the Order) was filed on July 10, 1991. Findings of fact and conclusions of law were not filed.

The Order stated:

1. The following was taken from the video transcript of the proceedings filed on appeal and is not a certified written transcription.

2. At the December 7, 1990 hearing, the following colloquy, taken also from the video transcript, took place:

> The court: Apparently you must have thought that the settlement was alright because you told them to go ahead and send the money and prep the documents, right?
>
> Attorney: I did think it was going to be accepted by her, yes.
>
> The court: I want that for the record. And I'm not blaming you because they must have given you that impression, right?
>
> Attorney: Well, they did. Yes.
>
> The court: Okay. Fine.
>
> Attorney: But I cannot tell this court that Mrs. Cook told me—

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that [Hilton's] Motion to Enforce Settlement and to Dismiss Case With Prejudice and [Surety's] Motion to Strike Notice of Appeal and to Compel Compliance With Settlement are hereby granted.

IT IS FURTHERMORE ORDERED that this Court finds and determines that there is no just reason for delay and directs the entry of Final Judgment with respect to *this Order* pursuant to Rule 54(b) of the Hawaii [Hawai'i] Rules of Civil Procedure.

(Emphasis added.) Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b) states:

> When more than one claim for relief is presented in an action, . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Although the Order directed the entry of a judgment, no judgment was filed in this case. Assuming the Order was one certifiable under HRCP Rule 54(b), the failure to file a judgment would normally preclude this court from having jurisdiction. HRCP Rule 58. The Hawai'i Supreme Court, however, has waived the filed-judgment requirement for appeals, like this one, filed prior to March 31, 1994. *Jenkins v. Cades Schutte Fleming &*

> The court: That's right. See, you felt—You got that impression from mainland counsel. I'm not blaming you. Somebody—If there was a miscommunication some place, it's between you and mainland counsel and not between you and defendants. Is that correct?
>
> Attorney: Um. I told them what I told them in this, uh, in the affidavit that I would insist that she accept this agreement and Belli indicated that, that they would do this and when I said I have this, the information I got back from them was "let's go ahead with it, get the documents up here." So, no, the checks are not being held hostage. I'm certainly not—

In its ruling, the court was referring to the last statement by Attorney. The affidavit that Attorney refers to is probably the affidavit attached to Appellants' memorandum in opposition to the motion to enforce settlement. The affidavit's contents are reiterated in our discussion.

*Wright,* 76 Hawai'i 115, 119, 869 P.2d 1334, 1338–39 (1994).

Appellants' appeal from the Order maintains that Attorney did not have their authority to settle. Appellants further request reversal of the orders granting Appellees' motions for summary judgment, despite the circuit court's refusal to certify the summary judgment orders and, as Surety correctly asserts, Appellants' failure to mention the summary judgment orders in their notice of appeal.

Hilton argues that Attorney had implied authority to settle and Surety declares that Attorney had apparent authority to settle. Both also contend that Appellants are equitably estopped from disaffirming a settlement.

## II.

■ We must first determine whether we have jurisdiction to consider this appeal. *Weinberg v. Mauch,* 78 Hawai'i 40, 45, 890 P.2d 277, 282 (1995). Generally, an appellate court may only consider an appeal from a final judgment, order or decree. *Id.* Essentially, this court has jurisdiction to consider appeals from: (1) a judgment, order or decree which fully determines the rights of the parties and leaves no matter for further action, *id.,* (2) an order or decree certified as a final judgment under HRCP Rule 54(b), *id.,* and (3) a collateral order, *International Sav. & Loan Ass'n v. Woods,* 69 Haw. 11, 15, 731 P.2d 151, 154 (1987). A collateral order is in " 'that small class [of orders] which finally determine[s] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.' " *Id.* (quoting *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949)). Collateral orders are "immediately appealable since they may not be effectively reviewable and rights could be lost, perhaps irretrievably, if review invariably had to await final judgment." *Id.* The test set forth for the application of the collateral order doctrine in *Cohen,* 337 U.S. at 545–46, 69 S.Ct. at 1225–26 and restated in *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) is that: "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment."

■ Here, the Order decided and, therefore, "conclusively determined" the question of the disputed settlement.

■ Furthermore, because the Order enforced a settlement agreement between the Appellants and Appellees, it resolved an important issue which was separate from and collateral to the merits of the underlying suit. "Settlement by definition avoids actual litigation of disputed issues[.]" *Sentinel Ins. Co. v. First Ins. Co.,* 76 Hawai'i 277, 294, 875 P.2d 894, 911 (1994). For a settlement " 'is an agreement to terminate, by means of mutual concessions a claim which is disputed in good faith or unliquidated. It is an amicable method of settling or resolving bona fide differences or uncertainties and is designed to prevent or put an end to litigation.' " *Sylvester v. Animal Emergency Clinic of Oahu,* 72 Haw. 560, 565–66, 825 P.2d 1053, 1056 (1992) (quoting 15A Am.Jur.2d Compromise and Settlement § 1 (1976)) (footnote omitted). Therefore, an order enforcing a settlement mandates compliance with compromise terms and does not represent an adjudication of claims or defenses. *Sentinel Ins. Co.,* 76 Hawai'i at 294, 875 P.2d at 911. The issue of whether Attorney had the authority to settle then was totally unrelated to the merits of whether Surety and/or Hilton were liable for Appellants' damages.

Finally, the Order would be effectively unreviewable on appeal from a final judgment in the case. If enforced, the settlement agreement provided that a voluntary stipulation for dismissal with prejudice pursuant to HRCP Rule 41(a)(1)(B) would be filed, rather than a judgment. "A voluntary dismissal by stipulation is effective immediately upon filing and does not require judicial approval." 9 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2363, at 270–71 (2d

ed. 1995) (footnote omitted).[3] Consequently, a stipulation filed pursuant to HRCP Rule 41(a)(1)(B) would ordinarily terminate the jurisdiction of the court as to the matters covered.[4] Pertinently, it has been held that:

A voluntary dismissal by stipulation under [Federal Rules of Civil Procedure] Rule 41(a)(1)(ii) is of right, cannot be conditioned by the court, and does not call for the exercise of any discretion on the part of the court. Once the stipulation is filed, the action on the merits is at an end. . . . "[A]n unconditional dismissal [ordinarily] terminates . . . jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal [if any] within the scope allowed by [Rule] 60(b)."

*Smith v. Phillips*, 881 F.2d 902, 904 (10th Cir.1989) (quoting *McCall–Bey v. Franzen*, 777 F.2d 1178, 1190 (7th Cir.1985)) (footnotes and other citations omitted). Moreover, if the Appellants were prevented from appealing until after the stipulation for settlement was filed, they would be obligated to execute the settlement even though they had contested its validity.

Therefore, "[t]he [O]rder . . . amounted to 'a final disposition of a claimed right which [was] not an ingredient of the cause of action and [did] not require consideration with it.'" *Woods*, 69 Haw. at 15–16, 731 P.2d at 154 (quoting *Cohen* 337 U.S. at 546–47, 69 S.Ct. at 1226) (brackets in the original). *Cf. Association of Owners of Kukui Plaza v. Swinerton & Walberg Co.*, 68 Haw. 98, 705 P.2d 28 (1985) (order regarding arbitration clause is a collateral order). As a result, we hold that an order enforcing a settlement agreement is a collateral order which is appealable.

Here, the court certified the Order pursuant to HRCP Rule 54(b). This, however, does not deprive us of jurisdiction because Appellants appealed from the collateral order which granted the motions to enforce settlement. But, by designating the Order as one subject to HRCP Rule 54(b) certification, the circuit court indicated that the Order was ripe for appeal although all claims as to all parties had not been determined, since there was no order disposing of the cross-claims between Surety and Hilton.[5]

3. While 9 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* (*Federal Practice*) § 2363 (2d ed. 1995) discusses Federal Rule of Civil Procedure (Fed.R.Civ.P.) Rule 41(1)(a)(ii), Hawai'i Rules of Civil Procedure (HRCP) Rule 41(a)(1)(B) is practically identical to Fed.R.Civ.P. Rule 41(1)(a)(ii). The federal rule states:

(a) **Voluntary Dismissal: Effect Thereof.**

(1) By Plaintiff; By Stipulation. Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court . . . (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

Fed.R.Civ.P. Rule 41(1)(a)(ii).

4. HRCP Rule 41(a)(1)(B) states in part:

(a) **Voluntary Dismissal: Effect Thereof.**

(1) By Plaintiff; By Stipulation. Subject to the provisions of Rule 23(e), of Rule 66, and of any statute, *an action* may be dismissed by the plaintiff without order of court . . . (B) by filing a stipulation of dismissal signed by all parties who have appeared in *the action*.
(Emphases added.)

The proposed dismissal stipulation stated it was made pursuant to HRCP Rule 41(a)(1)(B). The parties did not indicate whether the stipulation would encompass Appellees' cross-claims. Assuming that the parties intended the cross-claims to be adjudicated HRCP Rule 41(a)(1)(B) should not preclude only the stipulated dismissal of Plaintiff's complaint.

Although "the [U.S.] Court of Appeals of the Second Circuit [holds] that the word 'action' as used in [both branches of FRCP Rule 41(a)] denotes the entire controversy [as the object of dismissal], . . . the sounder view and the weight of judicial authority are to the contrary." 9 C. Wright & A. Miller, *Federal Practice* § 2362 at 250.

Hence, a stipulation of dismissal under Rule 41(a)(1)(B) need not be to the "entire controversy." *See also* Rule 41(c) (which correspondingly indicates that "[t]he provisions of [Rule 41] apply to the dismissal of any counterclaim, cross-claim, or third-party claim.")

5. Likewise, because the cross-claims between Hilton and Surety were technically still viable, the summary judgments in favor of the Appellees did not fully adjudicate all of the claims of the parties. *See Land v. Highway Constr. Co.*, 64 Haw. 545, 645 P.2d 295 (1982) (dismissal of underlying claim does not operate as dismissal of cross-claim filed against defendant by a co-defendant).

■ Next, we agree with Hilton's assertion that this court has no jurisdiction to consider Appellants' appeal of the orders granting summary judgment in favor of Appellees. Irrespective of whether the Order was a collateral order or an order certified pursuant to HRCP Rule 54(b), this court will only consider other orders which were preliminary rulings upon which the subject Order was predicated or were part of the series of orders which collectively led to that Order. *Weinberg,* 78 Hawai'i at 46, 890 P.2d at 283 (on Rule 54(b) certified order). *See Security Pac. Mortgage Corp. v. Miller,* 71 Haw. 65, 71, 783 P.2d 855, 858 (1989) (review is limited to parameters of orders appealed from). The summary judgment orders concern the merits of the case, and the settlement order in issue has no bearing on the merits. While the outcome of the summary judgment motions may have affected the parties' supposed willingness to negotiate as a practical matter, the summary judgment orders were not a prerequisite necessary to the Order. Furthermore, the circuit court expressly refused to direct the entry of final judgment under HRCP Rule 54(b) as to any of the summary judgment orders. Therefore, we hold that the question of whether the circuit court erred in granting Appellees' summary judgment motions is not properly before us for lack of jurisdiction.

### III.

■ The circuit court's conclusion of law that the settlement agreement was enforceable is reviewed *de novo. Sylvester,* 72 Haw. at 565, 825 P.2d at 1056. Because we ultimately conclude, that as a matter of law, Attorney was required to have "special authority in writing" to settle the litigation and

it is uncontroverted that he did not have such authority, we hold the court erred.

### A.

■ First, we consider whether Attorney had actual authority to settle Appellant's case. The relevant statute here is Hawai'i Revised Statutes (HRS) § 605–7 (1985) which states:

> **§ 605–7 Control of action; power to settle.** The practitioners licensed by the supreme court shall have control to judgment and execution, of all suits and defenses confided to them; provided that *no practitioner shall have power to compromise, arbitrate, or settle such matters confided to the practitioner, unless upon special authority in writing from the practitioner's client.*

"[P]ursuant to HRS § 605–7, the express written consent of the client is required in settlement proceedings." [6] *Hawai'i Housing Auth. v. Uyehara,* 77 Hawai'i 144, 150, 883 P.2d 65, 71 (1994). The statute is consistent with the general legal proposition that "an attorney has no power by virtue of his [or her] general retainer, to compromise his [or her] client's cause of action[.]" *McKeague v. Freitas,* 40 Haw. 108, 112–13 (1953) (not discussing HRS § 605–7). Rather, "precedent special authority or subsequent ratification is necessary to make such a compromise valid and binding on the client." *Id.* at 113. Hence, "a person dealing with an attorney . . . must ascertain whether the [attorney] has authority to do the purported act and assumes the risk if in fact the [attorney] has no such authority." *Id.* Generally, the authority of an attorney "need not be given in any particular form or conferred in any particular manner (except when compromising

---

6. We note, that for purposes of civil settlement conferences under Rule 12.1 of the Rules of the Circuit Court of the State of Hawai'i, an attorney representing a party is required to have authority to settle the case or risk sanctions.

> **Rule 12.1. CIVIL SETTLEMENT CONFERENCE; SETTLEMENT CONFERENCE STATEMENT.**
> (a) **Settlement Conference.** A settlement conference may be ordered by the court at any time before trial. . . . A settlement conference in civil cases shall be subject to the following guidelines:

> . . . .
> (2) Each party to the action shall attend the conference or be represented by an attorney or other representative who has authority to settle the case[.]
> . . . .
> (6) *Sanctions. . . .* [T]he failure of a party to have a person authorized to settle the case present at the conference shall, unless a good cause for such failure or neglect is shown, be deemed an undue interference with orderly procedures[ ] [subject to sanctions.]

pending litigation)...." *Id., quoted in Uyehara,* 77 Hawai'i at 150, 883 P.2d at 71. Case law is not inconsistent with the statutory mandate of HRS § 605–7. Thus, we hold, that ordinarily, an attorney must have the written authority of the client to settle in order to settle a matter on behalf of a client. *Uyehara,* 77 Hawai'i at 150, 883 P.2d at 71.

In this case, the record is devoid of any written authorization given by Appellants to Attorney for the purpose of engaging in settlement negotiations. Attorney and Lucrecia represent that Appellants did not confer authority on Attorney. Appellees do not claim that Attorney had actual written authority to settle. Under such circumstances, Attorney's alleged agreement to settle would be "unauthorized." *Id.* at 150, 883 P.2d at 71.

### B.

■ But, the court apparently found, and Hilton maintains, that based on information from co-counsel, Attorney believed he had implied authority to settle. Implied authority exists when the agent " 'reasonably believes, because of the conduct of the principal (including acquiescence) communicated directly or indirectly to him [or her,] that the principal desired him so to act.' " *Cho Mark Oriental Food. v. K & K Int'l,* 73 Haw. 509, 516, 836 P.2d 1057, 1062 (1992) (quoting *Lewis v. Washington Metro. Area Transit Auth.,* 463 A.2d 666, 670 n. 7 (D.C.App.1983)). However, because settlement authority must be in writing, an attorney cannot have implied authority to settle. *Uyehara,* 77 Hawai'i at 150, 883 P.2d at 71. Hence, our supreme court "in *McKeague* [,] clearly held that an attorney does not have implied authority to consent to settle a matter on behalf of his or her client." *Id.* Consequently, Attorney could not have had implied authority to settle the case.

### C.

■ Surety claims that Attorney had apparent authority to settle. Assuming *arguendo,* that apparent authority is an exception to the special written authority requirement, we do not find it applicable here. *See Nelson v. Boone,* 78 Hawai'i 76, 890 P.2d 313 (1995) (issue raised but not decided).

To establish apparent authority the following criteria must be met:

" '(1) [T]he principal has manifested his consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority; (2) ... the third person knew of the [principal's actions] ... and, acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority; and (3) ... the third person, relying on such appearance of authority, has changed his position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal.' "

*Cho Mark Oriental Food,* 73 Haw. at 517, 836 P.2d at 1062 (quoting *Knox–Tenn Rental Co. v. Jenkins Ins., Inc.,* 755 S.W.2d 33, 40 (Tenn.1988) (quoting 3 Am.Jur.2d Agency § 80) (1986)) (emphasis omitted) (omissions and brackets in the original).

The record does not evince any evidence that Appellants manifested consent to Attorney's exercise of settlement authority or knowingly permitted the exercise of such authority. Surety did not demonstrate that Appellants' actions, if any, led it to believe that Attorney had settlement authority. Indeed, in its ruling, the court indicated any miscommunication was apparently between Attorney and co-counsel, and not between counsel and Appellants. *See supra* at 403 n. 2, 903 P.2d at 711 n. 2. Finally, as we point out in Section D, *infra,* Appellees have not suffered any material change in position as a result of the aborted settlement efforts. Under the facts of this case, Attorney did not have apparent authority to settle.

### D.

■ Lastly, Appellees rely on the doctrine of equitable estoppel. "The theory of equitable estoppel requires proof that one person wilfully caused another person to erroneously believe a certain state of things, and that person reasonably relied on this erroneous belief to his or her detriment." *Maria v. Freitas,* 73 Haw. 266, 273, 832 P.2d 259, 264 (1992). *Accord Tiernan v. Devoe,* 923 F.2d 1024, 1038 (3d Cir.1991).

Even if we assume that Attorney willfully caused Appellees to believe he had authority to settle, Appellees have not established that they relied on the representations to their detriment. Appellees' claim of detriment amounts to Attorney's acceptance and retention of the checks and their time expended in preparing documents. The checks and the documents, however, were returned. Moreover, Appellees "appear to be in no worse position than they would be absent settlement[.]" *Tiernan*, 923 F.2d at 1038 (claim that the parties were damaged because they informed their insurance company of the settlement and if the settlement was void they would be denied coverage, did not establish reliance to the parties' disadvantage).

### E.

■ While Appellees do not argue that Appellants ratified the settlement, we note that " '[t]he unauthorized act of an agent, if ratified, is as binding upon the principal as an original express grant of authority.' " *Uyehara*, 77 Hawai'i at 150, 883 P.2d at 71 (quoting *McKeague*, 40 Haw. at 113). Therefore, a settlement will be treated as binding even in the absence of the express written consent of the client where the client ratifies the settlement. In that regard,

> "The ratification may be express or it may be implied from circumstances; whether or not the circumstances warrant the implication of ratification must of course depend upon the facts of each particular case. Any failure on the part of the client to object to an unauthorized act within a reasonable time after becoming aware of it will be construed as a ratification of it."

*Scott v. Pilipo*, 25 Haw. 386, 390 (1920) (quoting 6 C.J. § 182 at 670 (W. Mack & W. Hale 1916)), *quoted in part in, Uyehara*, 77 Hawai'i at 148, 883 P.2d at 71. The Hawai'i Supreme Court has also held a settlement valid even in the absence of written authorization where the clients had, in effect, ratified the settlement because they had ac-

quiesced in their attorney's actions and failed to make timely objection to the agreement. *Nelson v. Boone*, 78 Hawai'i 76, 84, 890 P.2d 313, 321 (1995). *See also Cobb v. Willis*, 7 Haw.App. 238, 245, 752 P.2d 106, 111 (1988) (attorneys presumed to have authority to bind the client because the client was present at settlement conference and did not object when her attorneys indicated to the court that they represented client).

■ Appellees have not shown that Appellants expressly or impliedly ratified the settlement. Lucrecia claims that she did not know of any settlement attempts. Attorney and co-counsel claim they had no authority to settle. The settlement documents and checks were never signed. The motions to enforce settlement filed November 30, 1990, were made a little over a month after Hilton and Surety sent the documents and checks to Attorney on October 26, 1990 and October 24, 1990, respectively. Thus, Appellants' refusal to settle was apparently communicated within a reasonable time of receiving the checks and documents. Under the circumstances, ratification of the purported settlement agreement did not take place.

### IV.

An attorney seeking to settle a case has three options when dealing with opposing counsel. He or she can (1) verify opposing counsel's authority with the client, (2) accept opposing counsel's representation of settlement authority, or (3) request proof of that authority, i.e. a document from the client stating that the attorney has the authority to settle. The first alternative is not a realistic option, as an attorney may not "[c]ommunicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so." Code of Professional Responsibility (CPR) DR 7–104(A)(1).[7,8] As was aptly stated:

---

7. The Code of Professional Responsibility (Code) was replaced in 1994 by the Hawai'i Rules of Professional Conduct (HRPC). However, while the case was pending in the court below, the Code was in effect and for that reason we discuss the case in terms of the Code and note the parallel rule in the HRPC.

8. HRPC Rule 4.2.

"Given that [usually] the settlement offeror-attorney ... [can] not ethically contact the other attorney's client, all he [or she] [can do is] to ask the other attorney what his authority [is]." *Johnson v. Tesky,* 57 Or.App. 133, 138–39, 643 P.2d 1344, 1348 (1982) (Joseph, C.J., dissenting).

Admittedly, as to the second alternative, an attorney should be justified in relying upon the statements of another attorney because attorneys are prohibited from "[e]ngag[ing] in conduct involving dishonesty, fraud, deceit, or *misrepresentation.*" CPR DR 1–102(A)(4) (emphasis added).[9] Thus, it has been observed that, " '[t]he authority of attorneys to make [settlement] agreements is, in practice, never questioned. It is essential to the orderly and convenient dispatch of business, and necessary for the protection of the rights of the parties.' " *Manchester Hous. Auth. v. Zyla,* 118 N.H. 268, 269, 385 A.2d 225, 226–27 (1978) (quoting *Beliveau v. Amoskeag Co.,* 68 N.H. 225, 226, 40 A. 734, 734 (1894)). As a result, there is much to be said for the proposition that legal representation in and of itself should encompass an attorney's authority to settle, without the necessity of a written authorization to that effect, since most cases are compromised and efforts to compromise may often be initiated on an ad hoc and informal basis. Such an approach would undoubtedly facilitate the transaction of business between attorneys. Additionally, this alternative affirms the core professional tenets of forthrightness and trustworthiness which should characterize relations among attorneys and between attorneys and clients.

On the other hand, the requirement that actual authority to settle be memorialized in writing is highly protective of a client's interests, shielding the client from an attorney's unauthorized representations. A statute, such as HRS § 605–7, is plainly intended to restrict such authority, to remove all doubt from its exercise, and to establish that a client's direction, in this area, is paramount. Certainly, the statute clearly establishes a "bright line" rule readily understood by the client, conveniently administered by the attorney, and easily applied by the court. Moreover, the rule precludes disputes such as this one which engender greater delay and expense in the disposition of a case because of inadvertent or at worst, contrived representations. Weighed against all these considerations, the burden placed on the attorney of securing written settlement authority from the client is minimal.

HRS § 605–7 is plain and straightforward. Generally, in the absence of "special authority in writing" from clients to settle, an attorney has no authority to settle. There was "no special [settlement] authority" given Attorney; hence, he had no authority to settle and Appellees were not justified in relying on settlement representations, if any, Attorney purportedly made on behalf of his clients.

V.

The Order Granting Defendant Hilton Hotels Corporation's Motion to Enforce Settlement and to Dismiss Case with Prejudice and Defendant Surety Life Insurance Company's Motion to Strike Notice of Appeal and to Compel Compliance with Settlement Filed November 30, 1990 and to Certify Order as a Final Judgment Pursuant to Rule 54 of the HRCP is vacated, and the case remanded for proceedings consistent with this opinion.[10]

9. HRPC Rule 4.1.

10. Because the issue is not squarely before us, we need not decide whether an attorney, who does in fact cause unreasonable delay in a case by negligent or intentional misrepresentation of his or her authority to settle, should be subject to disciplinary proceedings and/or court sanctions. We note, however, that the circuit courts have power under Hawai'i Revised Statutes § 603–21.9(6) (1985) to impose sanctions, including attorneys' fees and costs in behalf of affected parties, to protect their own calendars and to prevent abusive litigation practices. *Compass Dev., Inc. v. Blevins,* 10 Haw.App. 388, 393–94 n. 5, 876 P.2d 1335, 1338 n. 5 (1994).