## M. F. SCOTT AND NETTIE L. SCOTT *v.* E. N. PILIPO, ET AL., AND ESTATE OF J. B. CASTLE, KONA DEVELOPMENT COMPANY, LIMITED, AND T. KONNO.

### No. 1242.

ERROR TO CIRCUIT JUDGE FIRST CIRCUIT.
HON. J. J. BANKS, JUDGE.

ARGUED MARCH 1, 1920.                    DECIDED MARCH 29, 1920.

COKE, C. J., KEMP AND EDINGS, JJ.

ATTORNEY AND CLIENT—*authority of attorney.*

> The acts which an attorney is authorized to do by virtue of his employment include the taking of all steps in the regular progress of litigation, including even the giving up of technical, although substantial, advantages.

SAME—*unauthorized act—waiver.*

> If in the course of his employment an attorney does an unauthorized act and the client does not within a reasonable time after becoming aware of it disaffirm said act he is deemed to have waived his objection thereto.

WAIVER—*principles governing.*

> Waiver is a rule of judicial policy which prevents a person from taking inconsistent positions and gaining advantages thereby through the aid of courts even though the elements of estoppel and consideration are absent.

### OPINION OF THE COURT BY KEMP, J.

This is a writ of error to review a decree ordering the distribution of a certain fund among a portion of the holders of shares in the hui lands of Holualoa. In order to make understandable the proceedings had we must begin with the proceeding as the result of which the fund to be distributed was brought into court. At different times various phases of the partition suit of *Scott*

v. *Pilipo* involving the hui lands of Holualoa have been before this court. The present matter is an outgrowth of a collateral proceeding had therein by which C. K. Ai was required to account for rents which he had collected from a part of the property. Mr. M. F. Scott, who for many years has sponsored the proceedings had in said partition suit, after many failures finally succeeded in having Mr. C. K. Ai made a party to said partition suit and compelled to account for rents collected by him upon portions of said hui lands. The supplemental petition which Mr. Scott presented and asked leave to file purported to be in his own behalf and in behalf of all others similarly situated and when it was presented and permission asked of the circuit judge to file it Mr. W. A. Greenwell, of the firm of Castle & Withington, who appeared as attorney for Mr. J. B. Castle and the Kona Development Company, Limited, stated in open court: "I wish to state, if the court please, that we are not in sympathy; that we take no part in the proceedings in this Ai case and will not consider ourselves bound for any expenses, court expenses or attorney's expenses incurred in this matter in any way whatsoever and the attempt of Mr. Scott to prosecute this claim." At this particular time the circuit judge refused to permit Mr. Scott to file his supplemental petition but upon appeal to this court this feature of the decree was reversed (23 Haw. 625) and Mr. Scott thereafter successfully prosecuted the claim against Mr. Ai without the aid of Mr. Greenwell's clients and Mr. Ai was ordered to and did pay into court $1210 with interest, amounting in the aggregate to $2185.23. From the decree compelling him to account Mr. Ai appealed to this court and the decree was affirmed. (24 Haw. 277-284.) As soon as the accounting with Mr. Ai had been successfully concluded the estate of J. B. Castle (J. B. Castle

having since the former proceeding died), the Kona Development Company, Limited, and T. Konno, who had acquired a portion of the shares formerly held by J. B. Castle, reappeared in court by their same attorney, W. A. Greenwell, of the firm of Castle & Withington, and asserted the right and were permitted to take part in the further proceedings respecting the fund recovered as aforesaid. It appears on the record that the defendants in error combined own 73.54 shares in the hui of Holualoa. By motion Mr. Scott asked the circuit judge to fix the status of the Kona Development Company, Limited, and the estate of J. B. Castle, deceased, respecting the funds for which C. K. Ai had been ordered to account, said funds being for rents collected for use of the common property. The ground of the motion was that heretofore in open court the attorney for said Kona Development Company, Limited, and said J. B. Castle, now deceased, disclaimed all interest in said funds and refused to join in the prosecution for said accounting or to incur any liability for costs incurred in said proceedings. We do not find from the record before us that this motion was acted upon, but the matter of making the distribution was referred to a master and from proceedings had before said master it appears that some order was made on the motion, the exact nature of which is not disclosed. After a hearing before the master his report was made to the court, in which he found that the estate of J. B. Castle, T. Konno and the Kona Development Company, Limited, were jointly entitled to $1168.30 of said fund as the owners of 73.54 shares in said hui, and that other shareholders not necessary to name were entitled to the balance. Upon the hearing of said report another motion was made by Mr. Scott to have said item of $1168.30 stricken from the master's report. The ground of this motion was that heretofore

on or about April 20, 1916, when the question of whether to prosecute or not to prosecute said claim for an accounting under the supplemental petition before the court came up (said proceeding being prior to the decease of J. B. Castle) the attorney for said J. B. Castle and the Kona Development Company, Limited, by an announcement made in open court elected not to join or take any part in the prosecution of said claim under the said supplemental petition for an accounting then before the court for the reason that they regarded the liability for costs more probable than any benefits to be recovered and thereby by implication waived any claim to benefits that might be recovered. The motion was overruled and the decree, the reversal of which is sought by this writ of error, was thereupon entered approving and confirm-ing the master's report.

The question presented is, Are the defendants in error entitled under these circumstances to participate in the distribution of said fund? It is not questioned that Mr. Greenwell during all the proceedings above recounted was the duly authorized attorney of the defendants in error and had authority to represent them in said proceedings. Neither is it contended that he was expressly instructed by his clients to take any particular action or make any particular representations therein. He possessed, therefore, such authority to bind his clients as his employment confers and no more.

In 6 C. J. p. 641 it is said: "The acts which an attorney may do by virtue of his retainer are readily divisible into two classes: (1) Those in which his authority is absolute and his action binding upon his client without regard to the latter's consent in fact; (2) those in which he is presumed to be acting in accordance with his client's instructions which are therefore prima facie valid, but which the client may nevertheless disaffirm. Of the first

class are all the steps in the regular progress of litiga-
tion, including even the giving up of technical, although
substantial, advantages, such as a nonsuit. The second
class is not so capable of definition, but, in general, it
embraces all such acts as are customary for attorneys
to do, even though collateral to the technical course of
procedure, and which do not involve the sacrifice of
the cause of action." If the action of the attorney in
this case falls within the first division it is binding on
his clients without regard to whether they gave their con-
sent to such action or not. If it falls within the second
class it is likewise binding upon his clients unless they
disaffirmed his action. In speaking of the manner in
which a client may ratify the act of his attorney it is
said in 6 C. J. p. 670 that: "The ratification may be
express or it may be implied from circumstances;
whether or not the circumstances warrant the implication
of ratification must of course depend upon the facts of
each particular case. Any failure on the part of the
client to object to an unauthorized act within a reason-
able time after becoming aware of it will be construed
as a ratification of it." The action of the attorney in
this case occurred in April 1916 and his clients apparent-
ly acquiesced in that action. The matter then pending
was for a period of more than three years before the
court before they again appeared to take any action in
the case and when they did appear the particular pro-
ceeding had been successfully terminated without their
aid and the fund which they declined to help recover was
in court for distribution. They appeared by the same
attorney and claimed the right to share in the distribu-
tion of the fund. Under these circumstances we think
there can be no question that if Mr. Greenwell was not
authorized in the first instance to take the action which
he did take his action in that respect has since been

ratified by the conduct of his clients. If then the statement made by Mr. Greenwell in open court amounted to a waiver of. the rights of his clients they are bound thereby.

The question of whether or not a given state of facts brings the case within principles of the law of waiver is not always an easy one to determine. In *Pabst Brewing Co.* v. *Milwaukee*, 126 Wis. 110, 116, a statement of the principles which should govern in such cases, and which meets with our approval, is as follows: "It would seem that the more satisfactory ground on which to support the doctrine of waiver is that it is a rule of judicial policy, the legal outgrowth of judicial abhorrence, so to speak, of a person's taking inconsistent positions and gaining advantages thereby through the aid of courts,— a rule by which, regardless of absence of any element of estoppel or consideration as those terms are popularly understood, the maxim that one shall not be permitted to blow hot, then with advantage to himself turn and blow cold, within limits sanctioned by long experience as required for the due administration of justice, has been prohibitively applied. It is applied where one with knowledge of the facts voluntarily pays a demand upon him. It is applied when one with knowledge, or reasonable means of knowledge, of the facts having two inconsistent remedies chooses one of them. It is applied where one without objection and with such knowledge, or means of knowledge, receives property in consummation of an executory contract. The tendency of courts is to consider as within one of the exceptional classes any situation which is within the principle of it, both as regards the mere fact of waiver and the importance in the administration of justice of holding the waivee to the position he voluntarily and with knowledge has elected to take."

From the facts in this case it seems to us that the de-

fendants in error at the time when the question of whether or not they would join Mr. Scott in his effort to compel C. K. Ai to account for rents made their choice of the course they would pursue, no doubt deeming that course the most advantageous to them. It would now be, in our opinion, entirely out of harmony with the principles which should govern the administration of justice to permit them to abandon the position they at that time voluntarily and with knowledge of the facts elected to take.

The decree permitting the defendants in error to participate in the distribution of the fund is erroneous and must be reversed and it is so ordered and the cause is remanded for further proceedings consistent with this opinion.

*M. F. Scott* for plaintiffs in error.

*W. A. Greenwell* (*Robertson, Castle & Olson* on the brief) for defendants in error.