[Civ. No. 1076. Fourth Appellate District.—January 11, 1934.]

BENJAMIN W. BROECKER, Respondent, v. HARRY MOXLEY et al., Defendants; CHARLES SMITH, Appellant.

Hamilton, Lindley & Higgins for Appellant.

W. K. Brown, Edgar B. Hervey and J. Franklin Armstrong for Respondent.

BARNARD, P. J.—On the evening of December 19, 1931, the plaintiff was a passenger in a taxicab owned by the California Cab Company and driven by one of the persons constituting that company. As this taxicab was proceeding along Park Boulevard in the city of San Diego, a Cadillac rent car owned by the defendant Smith and driven by the defendant Bruce, and carrying two passengers for hire, bumped into the taxicab from the rear, causing injuries to the plaintiff. In this action which followed the owners and driver of the taxicab and the owner and driver of the rent car were jointly charged with negligence. The case was tried by the court without a jury and judgment rendered against Smith and Bruce, the owner and driver respectively of the rent car. From this judgment the defendant Smith alone has appealed.

The first point raised is that the respondent, through his then attorney, had compromised and settled his claim against those defendants who were owners of the taxicab and thereby released the appellant from liability. With respect

to this matter the record presents an unusual situation requiring a rather lengthy recital of the facts. When the case came on for trial on November 25, 1932, the appellant filed a supplemental answer in which it was alleged that the respondent's claim against certain of the defendants had been compromised and settled for the sum of $150. The court announced that it would first take up that phase of the matter. The attorney for the respondent was called as a witness and testified that there had been an attempt to settle the matter between himself and the attorneys for certain of the defendants and that a tentative agreement was drawn up which was not complete; that he signed the tentative agreement in blank but that the agreement was never completed; that he received $150 from these attorneys; and that the same had not been paid back. He further testified that when he went to the office of the attorneys with whom he was negotiating he found two papers prepared for his signature; that he called one of these attorneys on the telephone and informed him that he would sign only one; and that he then signed one of the papers in blank but did not sign the other. One of the attorneys just referred to was called as a witness and testified that he prepared two papers, a partial satisfaction of judgment in blank and a release of all claims and demands growing out of this accident; that he left these with his secretary with instructions to deliver a check for $150 when the two papers were signed by the respondent's attorney; that this attorney refused to sign one of the papers and called him up on the telephone; and that "as a result of which the matter was left open for further negotiations; and I contended that he take—I instructed my girl to give him the check pending these other matters being agreed upon, and that they never were agreed upon and he never signed the second agreement, and we have been unable to get back the $150." The paper which was signed by the respondent's attorney was a partial satisfaction of judgment dated October 28, 1932, and was headed by the full title and number of this case. It recited that in consideration of the sum of $150 and other good and valuable consideration paid by the defendants constituting the California Cab Company "full satisfaction is hereby acknowledged of a certain judgment rendered and entered in said Court in the said action on the

—— day of ——, 1932, in favor of plaintiff in the said action insofar as the said judgment is against any of the said defendants, or all of them, for the sum of —— Dollars ($——) current lawful money of the United States of America together with interest thereon as specified in said judgment and plaintiff's costs, as such judgment is recorded in Book No. —— of Judgments, at page —— records of the County Clerk's office, San Diego, California. This satisfaction of judgment, however, shall not release the judgment of plaintiff against any of the defendants, except those named herein, and I hereby authorize and direct the Clerk of said Court to enter satisfaction of record of said judgment in said action as to said defendants." This instrument was shown to the court and admitted in evidence, but does not appear to have been read aloud or shown to the respondent. It developed that a continuance was necessary in order to secure certain other evidence with reference to the purported settlement and the court announced that in order to save time evidence would be received on the original issues. The respondent was then called to the stand and was asked and answered many questions relating to the case on its merits.

An adjournment was taken to December 1, 1932, at which time the matter of the purported settlement was again taken up. At this time one of the attorneys for the other defendants referred to testified that the respondent's attorney had in the meantime handed him a check for $150 which he refused to accept, telling him that he was not authorized by his clients to accept the return of the money. The witness produced a copy of the other document which respondent's attorney had been asked to sign, which was a full release of all claims growing out of this accident. With respect to the two instruments referred to, the witness testified that the attorney for the respondent called him on the telephone and told him it was his understanding that he was only to sign the blank partial satisfaction of judgment; that he replied that if this was his understanding the check would be delivered and he could later take up the matter with the witness' partner; that he then told his secretary over the telephone to deliver the check to the respondent's attorney when the blank partial satisfaction was signed; and that when he returned to the office he found that the original

release was not signed. This witness' law partner testified that he conducted the negotiations for a settlement with the respondent's attorney and that a settlement was agreed upon on the express condition that the fact that a settlement had been made should be kept secret; that about two weeks before the day of the trial he discovered that his agent had told an adjuster for the defendant Smith that the settlement had been made; that he thereupon called the attorney for the respondent on the phone and told him what had happened; that the attorney for the respondent came right over and stated that he rescinded the agreement on that ground and offered a note in the sum of $150 which the witness refused to accept for the reason that he did not have any authority from his principal to do so; and that he then wrote to his principal in regard to the matter but had never received authority to accept the money. The attorney for the respondent then testified that on that occasion he told these attorneys that he would rescind the agreement and would return the $150; that these attorneys informed him they had no authority to accept a rescission but would take the matter up with their principal; that he had since taken the matter up with these attorneys and had been advised that their principal had never authorized the acceptance of the money; that on that date he told them he would return the money if they would take it; and that he was unable to pay them the money because they refused to accept it. At the close of this hearing the court ordered judgment in favor of all of the defendants on the ground that one joint tort-feasor had been released.

After this hearing the respondent substituted other attorneys for his then attorney and, on December 8, 1932, filed a notice of motion to reopen the case and set the same for further trial and determination. This motion was based on the ground that any purported satisfaction of judgment claimed to have been executed on behalf of the respondent was not executed by him nor with his knowledge or consent, that the purported satisfaction of judgment introduced in evidence was wholly unauthorized, fraudulent and void, and that any action taken by his former attorney was in excess of his authority, without his knowledge, and fraudulent. Affidavits in support of the motion and in opposition thereto were filed and a hearing had and on Decem-

ber 19, 1932, the court granted the motion on condition that the $150 be paid into court. This was done and the trial proceeded, resulting in the judgment above referred to. The court found that the respondent had not agreed to settle his claim against any of the defendants, that he was not a party to any agreement with the members of the California Cab Company, that he at no time authorized the making or entering into of any such agreement on his behalf, that he had no knowledge of the making of any such agreement, and that he never ratified any such agreement or accepted any benefits therefrom or received any consideration therefor.

It is not seriously argued that the action of his first attorney in signing a partial satisfaction of judgment in blank was either authorized by the respondent or within the implied authority of an attorney. But it is earnestly contended that the respondent ratified the action of his attorney in signing the instrument by failing to inform the court during the hearings on November 25th and on December 1st that the same had been signed without his knowledge, that it was unauthorized and that he refused to be bound thereby. It is argued that he then obtained full information of what had been done by his attorney and that he had full opportunity to inform the court of his disavowal thereof since he was on the witness-stand for a considerable period.

It may first be observed that whatever presumptions exist in favor of the authority of an attorney to bind his client these presumptions cease if the court and the other parties are notified of a lack of authority before a matter is consummated (*Preston* v. *Hill*, 50 Cal. 43 [19 Am. Rep. 647]). If it could be assumed that an attorney had the authority to bind his client by accepting a small part of the amount claimed and signing a satisfaction of judgment before trial, a number of other considerations affect the situation here. The purported satisfaction of judgment was signed in blank and left for future completion with definite dates and amounts to be later filled in. The misunderstanding as to whether one or two instruments were to be signed was left for a future adjustment which was never had. The condition on which the agreement was based was broken. An attempted rescission was held up to permit the other

attorneys to take the matter up with their clients, but no reply was ever received. In the meantime the entire matter came to the attention of the court and the other parties.

It is also a general rule that ratification cannot take place until the party ratifying is in possession of the full facts. It appears that the full facts in this matter did not come out at the hearing on November 25, 1932. While the purported satisfaction of judgment was referred to and introduced in evidence it does not appear that the respondent saw it or knew what it contained. His attorney testified that he had made no agreement of settlement with the defendants in question, and during the argument most of the attorneys stated to the court that they did not know what was the effect of the paper about which they were talking. In order to find out what had occurred it was necessary for the court to continue the hearing and secure other evidence. Thereupon, the respondent was called to the stand and was asked specific questions relating to the merits of the case, which he answered. Under these circumstances, when court and counsel could not understand what had been done, it is hardly reasonable to hold that the respondent, who had not even been shown the instrument which it is claimed is binding upon him through ratification, must have understood the situation, and that it was his duty while on the witness-stand to interrupt the proceedings and to inform the court that he had not authorized, would not be bound by and disavowed that which his attorney had just testified he had not done. At the hearing on December 1st the full facts with reference to the purported settlement came out for the first time and the court at once acted. Immediately thereafter the respondent discharged his attorney and obtained other counsel. He acted promptly after all information came to him as to the acts of his former attorney and, in our opinion, he cannot be held to have ratified such acts merely because he did not make an earlier protest to the court.

The attempt to satisfy the judgment as to certain defendants in advance of its being rendered and the agreement to keep the entire transaction secret was a fraud on the court and on the respondent as well, and furnishes an additional reason why he should not be held to have ratified the same, especially until such time as he came into posses-

sion of all of the facts. He then acted promptly, and appellant had not changed his position because of anything that had happened in the meantime. Under the facts of this case we think that the purported partial satisfaction of judgment signed in blank by the former attorney for the respondent was ineffectual for the purpose claimed and that the same did not release any of the defendants from liability.

A second contention is that the appellant is not liable because the driver of his car intentionally collided with the taxicab for the purpose of attracting the attention of the driver of that vehicle and thereby acted without the scope of his employment. It is conceded that the driver of the Cadillac was driving the same for the appellant, and that he was at the time taking two passengers for hire to their destination by a proper route. But it is claimed that the evidence conclusively shows that he departed from the scope of his employment and engaged in an undertaking for himself since he testified that he thought he must know the driver of the taxicab and intended to attract his attention by gently bumping his rear bumper. It appears that the two cars were at that time passing a street intersection where there were two dips constructed for the purpose of draining water, that as the cars were passing the first dip the front bumper of the Cadillac caught on the rear bumper of the taxicab and that as the cars passed the second dip the bumpers became disengaged. Apparently the respondent was thrown to the floor of the taxicab on the first contact of the cars. While the driver of the Cadillac testified that he intended to bump the other car easily in order to attract the driver's attention and that the bump was more severe than he intended, at other times he testified that it was his intention to drive close enough to see if he recognized the other driver; that he did not intend to bump the other car unless he recognized the driver; that he came up close in order to look ahead to see if he knew the other driver; and that when the other car slowed down for the dip he put on his brakes and tried to stop and prevent the two cars from coming into contact. There is some evidence that he did not intend to bump the other car unless he knew the driver thereof, that he did not recognize that driver until the accident had occurred and the car had

stopped, and that while running close to the other car he endeavored to stop when he saw the other car decrease its speed. In any event, he was an employee of the appellant and was engaged in a specific mission for the benefit of his employer. He had neither stopped nor turned aside from the regular route to his destination and, in our opinion, his manner of driving constituted negligence rather than a departure from the scope of his employment. While an attempt to satisfy his own curiosity may have involved an element personal to him, the same may be said of the act of a driver who allows his attention to be distracted by something interesting on the side, or who drives at an excessive speed in order to complete his work at an earlier hour. Any such personal interest reflects itself in the manner of driving, is intimately associated with the employment, and is not a thing apart therefrom. If it can be said at all that this driver was engaged in his own business for the moment, it is still true that he was at the same time and predominantly engaged in his master's business. As was said in *Ryan* v. *Farrell*, 208 Cal. 200 [280 Pac. 945, 946]:

"It is the established rule in this jurisdiction that where the servant is combining his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured; but the master will be held responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master."

It cannot be said that the driver of the Cadillac had so departed from the scope of his employment as to relieve the appellant from responsibility.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.