SON-GI HAN, Plaintiff-Appellant,
v.
PAUL KANG, COLDWELL BANKER COMMERCIAL PACIFIC PROPERTIES, LTD., COLDWELL BANKER REAL ESTATE CORPORATION, Defendants-Appellees, and
DOES 1-10, and PARTNERSHIPS CORPORATIONS and/or ENTITIES 1-10, Defendants.
No. 27865.
Intermediate Court of Appeals of Hawaii.
November 25, 2009.
On the briefs:
Son-Gi Han, (Han), Plaintiff-Appellant, pro se.
David M. Louie, James R. Ferguson, and Jennifer B. Lyons, (Roeca, Louie & Hiraoka) for Defendants-Appellees.

MEMORANDUM OPINION
NAKAMURA, C.J., FOLEY and FUJISE, JJ.
Plaintiff-Appellant Songi Han (Han), pro se, appeals from the final judgment entered on March 8, 2006, in favor of Defendants-Appellees Paul Kang (Kang), Coldwell Banker Commercial Pacific Properties, Ltd. (CBCPP), and Coldwell Banker Real Estate Corporation (CBREC) (collectively Defendants) in the Circuit Court of the First Circuit (circuit court).[1] Han seeks to invalidate a settlement agreement that called for the dismissal of a lawsuit against her real estate agent in a commercial lease transaction.

I. Background
This case arises over Han's lease of a Waikïkï restaurant. After a mutual friend introduced Han to Kang, a licensed real estate agent and investment specialist with Coldwell Banker, Han entered into an exclusive agreement with Kang to search for an appropriate location for her new business. Kang showed Han several possible restaurant locations before Han signed a lease for a unit described by the parties as "the Discovery Bay Space." Han believes that Kang "pre-selected" the Discovery Bay Space without regard for her business needs because CBCPP also represented the building's landlords.
The lease, dated October 18, 2000, warranted that the location was zoned for a restaurant and cocktail lounge. Nevertheless, Han claims that Kang made various representations that led her to believe that the unit was suitable for a hostess bar. She claims that, despite knowing of her limited vision and poor proficiency in English, Kang had her sign the lease contract without explaining it to her and after advising her that she did not need to have an attorney review it.
Han opened the Oasis Bistro in February 2001, after obtaining a general restaurant liquor license. A short time later, the Honolulu Liquor Commission cited her for operating a hostess bar in contravention of her liquor license. Han tried unsuccessfully to continue the business as a restaurant only and closed the business after about a year in operation. She agreed in February 2002 to vacate the Discovery Bay Space.
Han filed the underlying lawsuit on February 10, 2003, claiming fraud, civil conspiracy in violation of Hawaii Revised Statutes (HRS) § 415B-69 et seq.,[2] negligence, and unfair trade practices. Han contends that in order to induce her to sign the lease, Kang misrepresented that the unit was suitable for a hostess bar[3] and failed to timely disclose that CBCPP represented the sellers of the Discovery Bay Space. Han alleges that CBREC and CBCPP were vicariously liable for Kang's actions. Han claimed approximately $250,000 in damages, the monies expended to remodel, outfit, and run the club.
On August 31, 2004, CBCPP filed a motion for summary judgment. On the same day, Defendant CBREC also filed a "Motion for Summary Judgment, Alternatively, Substantive Joinder in [CBCPP's] Motion for Summary Judgment." Han's attorney did not file a memorandum in response to CBREC's motion. The circuit court denied CBCPP's motion on September 22, 2004. On October 1, 2004, the circuit court granted summary judgment in favor of CBREC, stating:
The Court, having considered the Motion, the declarations and evidence submitted in support of the Motion, the argument of counsel, being fully advised in the premises, and no opposition being made, finds as follows:
CBREC's Motion is granted in its favor and against plaintiff Han, and all claims against CBREC are dismissed with prejudice.
Kang and CBCPP filed for summary judgment again on December 13, 2004. Soon after, on December 16, 2004, the circuit court convened the first settlement conference in the case. The circuit court granted partial summary judgment in favor of Kang and CBCPP on January 10, 2005.
On May 5, 2005, the circuit court held a hearing on motions in limine, after which Han's counsel, Arnold Phillips (Phillips)[4], met with Kang's and CBCPP's attorneys to discuss a potential settlement. According to Phillips, he met with his client at the end of the negotiations to relay Defendants' settlement offer of $20,000. In a declaration to the circuit court filed October 13, 2005, Phillips described his conversation with Han:
I discussed with her the significance of the Court's efforts to make a settlement before the start of the trial and the scope of the negotiations. During this conference with [Han] I felt that she had the requisite capacity to make an adequately considered decision respecting whether, how and on what terms to settle the dispute. I went over the advantages and disadvantages of a settlement, explained to her the status of the litigation and answered all of her question [sic] to the extent reasonably necessary to permit her to make an informed decision about settling the lawsuit. Han and Phillips agreed to make a $60,000 counteroffer. On May 6, 2005, the circuit court notified Phillips that Kang and CBCPP's settlement offer was $40,000. Phillips said he discussed this offer with Han, who told him that "the situation of the day before had not changed and that I should announce to the Court that she would [sic] accept this figure."
In the afternoon of May 6, 2005, the circuit court convened a telephonic conference to place the terms of the settlement on the record. The transcript does not indicate whether Han was present with Phillips or otherwise during this proceeding. The recitation of the settlement terms was as follows:
MR. FERGUSON [attorney for Defendant Kang]: I understand that we have an agreement to resolve this case in the amount of $40,000. And in exchange for that consideration, [Han] will release all parties, Coldwell Banker and Paul Kang, and will execute a standard indemnification and settlement agreement to be prepared by defendant's [sic] counsel, to be reviewed by [Han's] counsel, and there will be a confidentiality provision in the agreement. And those are the essential terms, I believe.
If there are any additional terms, Mr. Phillips, at this time
MR. PHILLIPS: No, Your Honor. I think that's a fair statement of what the agreement is, all the essential terms.
MS. YEE [attorney for CBCPP and CBREC]: The release should also cover the Coldwell Banker's officers, directors, shareholder, employees, agents, you know, related companies, the franchise, or any successors or predecessors to Coldwell Banker on this Discovery Bay Estates that we're talking about and any (indiscernible) by Discovery Bay.
MR. PHILLIPS: Any what?
MS. YEE: I guess, Discovery  well, I guess, Discovery Bay we could use as an indemnification, just like Cruiser [sic].
MR. PHILLIPS: Yeah. I think we're  I agree with Ms. Ferguson [sic] I mean, we're talking about a standard type of indemnity agreement usually used in these jurisdictions, so I think that's the best language to have at this point.
MS. YEE: Okay.
The Defendants sent a draft settlement document to Phillips on May 19, 2005. In a letter dated May 26, 2005, Phillips objected to several provisions in the draft, including an anti-disparagement clause, a liquidated damages clause, and a clause releasing claims against the building's landlords, another business owned by Kang, and landlords of two properties viewed by Han as potential spots for the club. After CBCPP refused to remove disputed terms, the parties met with the circuit court for a status conference. A status conference was held on August 29, 2005, but no agreement was reached as to the disputed terms.
On September 19, 2005, at 8:12 a.m., Han filed a "Motion to Vacate Settlement and Resume Deposition of Plaintiff," which was signed by her. Two hours later, Phillips filed a competing motion to enforce settlement, asserting that the settlement was enforceable but asking the circuit court to strike language from the CBCPP's draft because it was not included in the terms as stated on May 6, 2005.
Han's motion says she "accepted Defendants' small settlement offer on May 6, 2005, in accordance with the instructions of the Court to Plaintiff's Counsel . . . ." She alleges, however, that the proposed settlement document includes terms that were not part of the settlement agreement. According to Han, "Some of the said representations and agreements Defendants sought unilaterally in bad faith to impose on the Plaintiff after the May sixth settlement agreement was negotiated by this Court, are blatantly untrue, and others are beyond the ability of the Plaintiff to even comprehend." Han said she specifically instructed her attorney not to file a motion to enforce the settlement, as she could not endorse the settlement because she believed it to be void.
On September 27, 2005, eight days after Han and Phillips's competing motions, the Defendants' attorney sent Phillips a revised settlement agreement. This revised agreement excluded the non-disparagement and liquidated damages clauses and included a revised confidentiality agreement. These clauses had been in dispute during the summertime negotiations and the circuit court had advised the parties to remove them at the status conference. On October 6, 2005, Kang and CBCPP filed a motion to enforce settlement, attaching the revised settlement agreement labeled as "Exhibit F" (Settlement Agreement).
The circuit court held hearings on the three settlement motions  Han's "Plaintiff's Motion to Vacate Settlement and Resume Deposition of Plaintiff" as drafted by attorney Robert Hanna (Hanna)[5], the "Plaintiff's Motion to Enforce Settlement" drafted by Phillips, and the Defendants' Joint Motion to Enforce Settlement  on October 10 and October 18, 2005.
At the October 10 hearing, the following colloquy took place:
THE COURT: . . . Let me ask you one more question, Mr. Phillips. Have you had a chance to review the revised proposed settlement agreement from the defendants?
MR. PHILLIPS: I have, Your Honor.
THE COURT: Do you believe that that now complies with what the actual agreement was?
MR. PHILLIPS: I do believe that it does. There might be a couple minor things, but all of the points that we were concerned about I think have been addressed.
At the conclusion of the October 18 hearing, the circuit court issued an order dismissing the motions by Han and Phillips and granting Kang and CBCPP's motion to enforce the Settlement Agreement. The circuit court found by Han's admission in her September 19, 2005 motion, "she had authorized Mr. Phillips to settle the case based on certain terms that were placed on the record on May 6, 2005."[6] With regard to Defendants' motion to enforce the Settlement Agreement, the circuit court ruled,
On May 6, 2005, a settlement was placed on the record, reflecting essential and material terms. [Han's] motion (1) admits in writing that Mr. Phillips was authorized to place that settlement on the record. Defendants did subsequently add additional provisions to the proposed settlement agreement, which had not been discussed or agreed upon by [Han]. These issues were discussed at a status conference between counsel and the court on August 29, 2005. As stated by Mr. Phillips as an officer of the court (towards the conclusion of the October 10, 2005 hearing), the final version of the settlement agreement (attached as Exhibit F to motion (3)) accurately reflected the essential terms of the settlement as authorized by the Plaintiff and as placed on the record on May 6, 2005. The court also so finds and concludes. Accordingly, this motion is GRANTED. The case is therefore deemed settled pursuant to the terms of the settlement agreement attached as Exhibit "F" to the motion.[7] (footnote added). At the same hearing on October 18, the circuit court granted Phillips's oral motion to withdraw as Han's counsel.
On December 5, 2005, Han filed a motion for reconsideration. On March 8, 2006, the circuit court denied Han's motion for reconsideration and entered the amount of the charging lien filed by Phillips. The circuit court reiterated its October 18, 2005 order dismissing the case with prejudice under the Settlement Agreement.

II. Standards of Review
A trial court's determination that a settlement agreement is enforceable is a conclusion of law reviewable de novo. Assocs. Fin. Serv. Co. of Hawaii, Inc. v. Mijo, 87 Hawai'i 19, 28, 950 P.2d 1219, 1228 (1998). "Whether the parties in fact entered into an agreement is essentially a question of fact." Id. This court will review a trial court's findings of fact under the clearly erroneous standard. Id. (citing State v. Soto, 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997)). "A finding of fact is clearly erroneous when, despite the evidence to support the finding, the appellate court is left with a definite and firm conviction, in reviewing the entire record, that a mistake has been committed." Id. (internal quotation marks omitted).

III. Discussion
Han's Opening Brief does not conform with the requirements of Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4).[8] She does not present concise points of error nor does she state where in the record the error occurred or quote any finding or conclusion urged as error. Generally, "failure to comply with HRAP Rule 28(b)(4) is alone sufficient to affirm the circuit court's judgment." Morgan v. Planning Dept., County of Kauai, 104 Hawai'i 173, 180, 86 P.3d 982, 989 (2004). However, given Han's pro se status, and a policy of affording litigants the opportunity "to have their cases heard on the merits, where possible[,]" we will exercise our discretion to decide the matters discussed in Han's Opening Brief despite its noncompliance. O'Connor v. Diocese of Honolulu, 77 Hawai'i 383, 386, 885 P.2d 361, 364 (1994). Han puts forth a multitude of complaints, which follow in the order they appear in her opening brief.

A. The circuit court did not abuse its discretion in denying Han's Motion to Amend.
On April 5, 2005, more than two years after the complaint in this case was filed, Han filed a "Motion for a Continuance, Leave to Amend Complaint, and to Allow HRE 404(b), 608, and 609 Evidence," asking the circuit court's permission to add Inmi Larue (Larue)[9] as a defendant, to plead conspiracy involving Larue and Defendants in a scheme to defraud Han, and to allow testimony and evidence with respect to Larue's character. Defendants opposed this motion.
Hawai'i Rules of Civil Procedure (HRCP) Rule 15(a) provides that, after a party has responded to an initial pleading, the original party may amend its pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The denial of a leave to amend under Rule 15(a) is within the trial court's discretion. Associated Eng'rs & Contractors, Inc. v. State, 58 Haw. 187, 218, 567 P.2d 397, 417 (1977) (citing Bishop Trust Co., Ltd. v. Kamokila Dev. Corp., 57 Haw. 330, 555 P.2d 1193 (1976)).
Han argues on appeal that the circuit court erred by denying her request to amend her complaint to add a defense witness as an additional defendant and to add a cause of action for advancing perjury and conspiracy to commit perjury. However, the record on appeal does not contain either a written order or other disposition of Han's motion to amend or a transcript of any hearing on the motion.[10]
It is well settled that the appellant has the duty to supply the appellate court with a sufficient record to demonstrate the alleged error. Bettencourt v. Bettencourt, 80 Hawai'i 225, 230, 909 P.2d 553, 558 (1995); Ling v. Yokoyama, 91 Hawai'i 131, 135, 980 P.2d 1005, 1009 (App. 1999). This duty, imposed by HRAP Rule 10, requires the appellant to include the relevant transcript of proceedings as part of the record on appeal. HRAP Rule 10(b)(1)(A).[11]
The appellant must show error by providing reference to the record. See Bettencourt, 80 Hawai'i at 230, 909 P.2d at 558. Given that Han has not shown in the record where the alleged error occurred, she has failed to meet her burden. Moreover, as Han's motion was brought long after the complaint was filed and sought to join as a party a person of whom Han was long aware, we cannot say, on this record, that the circuit court abused its discretion when it denied Han's motion.

B. The circuit court was not required to enter findings of facts and conclusions of law.
Han alleges the circuit court erred by not providing findings of facts and conclusions of law on disputed issues regarding settlement. Han alleges that the circuit court did not respond to her April 17, 2006 request to enter findings of fact under HRAP Rule 10(f).[12] This rule permits such a request in cases where findings of fact are required upon filing a notice of appeal. However, "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in subdivisions (b) and (c) of this rule." HRCP Rule 52 (emphasis added). The circuit court is not required to file findings of fact and conclusions of law when ruling on motions to enforce or vacate a settlement. Id. Therefore, HRAP Rule 10(f) is inapplicable here. Han's contention that the circuit court erred by not outlining its factual findings and by not responding to her request under HRAP Rule 10(f) is without merit.

C. The circuit court did not err in granting CBREC's motion for summary judgment.
Han contends that the circuit court erred by granting CBREC's motion for summary judgment. CBREC's motion for summary judgment was filed on the same day that CBCPP filed its own motion for summary judgement. Han's counsel[13] answered only CBCPP's motion for summary judgment.
HRCP Rule 56(e) states:
When a motion for summary judgment is made . . ., an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
CBREC argued that summary judgment was appropriate because it could not be held vicariously liable for actions of its franchisee CBCPP and Kang because they were not agents for CBREC. A franchisee does not, by virtue of an existing franchise arrangement, become the actual agent of the franchisor, nor does language defining a franchisee as an independent contractor conclusively establish that a principal-agent relationship does not exist. 62B Am. Jur. 2d Private Franchise Contracts § 297 (2005). Although a franchise agreement expressly disclaims agency on part of franchisee, the court must consider the franchise agreement and the amount of control exercised over the franchisee. See Ottensmeyer v. Baskin, 2 Haw. App. 86, 88, 625 P.2d 1069, 1071 (1981). See also 62B Am. Jur. 2d Private Franchise Contracts § 298 (2005).
In support of its motion, CBREC filed its franchise agreement, under seal, and declarations by CBCPP's principal broker and Kang to show that CBCPP was an independent contractor of CBREC and Kang was an independent contractor of CBCPP, that CBREC did not exert control over the daily operations of CBCPP or Kang, and that CBREC was not involved in the transaction underlying Han's claims. By doing so, CBREC satisfied its burden of producing evidence that it cannot be held vicariously liable for CBCPP and Kang.
Once the moving party satisfies its initial burden of production, the burden shifts to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial. French v. Hawaii Pizza Hut, Inc., 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004) (quoting GECC Fin. Corp. v. Jaffarian, 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App. 1995)). By not filing a reply to CBREC's motion for summary judgment, Han left CBREC's evidence of non-agency undisputed. Therefore, it was appropriate to enter summary judgment in favor of CBREC and the circuit court did not err in doing so.

D. This court has no record upon which to evaluate Han's claims of an improper ruling on the motions in limine.
Han argues that the circuit court erred in limiting the testimony of attorney Wayne Luke (Luke) and evidence about Larue and Kang.
Han claims that the circuit court prohibited Luke, who helped her obtain her liquor licenses, from testifying as an expert witness, despite the fact that her pretrial statement listed him as an expert witness. Han further claims that the circuit court erred in excluding testimony about the character of Larue and Kang, presumably for impeachment purposes. Han does not cite to particular actions by the circuit court, but her complaints apparently stem from the circuit court's ruling on Kang and CBCPP's joint motions in limine nos. 11 and 7, respectively.
The circuit court scheduled a hearing on the motions on May 5, 2005. Han does not provide a transcript of the May 5 hearing, nor does an order on the motions in limine appear in the record. As a result, this court cannot evaluate Han's claim and must reject this argument. See Bettencourt, supra.

E. The circuit court did not err in granting Phillips's motion to seal.
Han alleges that the circuit court abused its discretion when it sealed evidence or portions of the record. The only concrete example she gives is the circuit court's granting of the "Plaintiff's Motion for Sealing of the Record," filed on December 14, 2005. Han argues that the motion should not have been granted because it was filed on her behalf by Phillips, although he had been granted permission to withdraw from representing her.
There is no indication in the record that this motion was heard or even scheduled to be heard, nor does the record contain a written order or other disposition of the motion. Again, Han has failed to sustain her burden on appeal.

F. Han's constitutional claims do not conform to HRAP Rule 28(b).
Han alleges numerous constitutional violations, including a lack of due process, equal protection, and ineffective assistance of counsel. These claims are scattered throughout her brief and are broad, hyperbolic generalizations about the deposition process and rigors of pre-trial litigation. As noted above, Han's "failure to conform [her] brief to the requirements of HRAP Rule 28(b) burdens both the parties compelled to respond to the brief and the appellate court attempting to render an informed judgment." See Housing Fin. & Dev. Corp. v. Ferguson, 91 Hawai'i 81, 85, 979 P.2d 1107, 1111 (1999). Because Han has not pointed to instances of alleged errors in the record, this court cannot assess the merits of her argument. See Part III A, supra.

G. Han's request for sanctions is not supported by references to the record.
Han repeatedly alleges bad faith on the part of the Defendants and accuses them of being engaged in a "nefarious, treacherous, shameful plot" against her, "[o]ne of this country's inspiring heroines." Han does not point to specific instances of arguably sanctionable conduct in her brief, but does challenge the denial of her motion for sanctions, which was filed April 13, 2005.[14] The record does not contain an order denying sanctions nor a transcript of a hearing on this motion. Without specifically identifying where in the record she believes an error occurred, Han has failed to sustain her burden on appeal.

H. The circuit court erred in granting the Defendants' motion to enforce settlement.
Han argues the circuit court erred in granting CBCPP and Kang's motion to enforce settlement because the settlement was invalid. This court treats a motion to enforce settlement similar to a motion for summary judgment. Miller v. Manuel, 9 Haw. App. 56, 63-64, 828 P.2d 286, 291-92 (1991), cert. denied, 72 Haw. 618, 841 P.2d 1075 (1992). A motion to enforce settlement cannot be granted when a factual question remains "concerning the existence, validity and terms of the alleged settlement." Id., 9 Haw. App. at 64, 828 P.2d at 291 (quoting Mancina v. Hoar, 129 Cal. App. 3d 796, 797, 181 Cal. Rptr. 347, 348 (1982)).
Thus, the question is whether the evidence presented to the trial court indicated that there was no genuine issue of material fact and that as a matter of law the parties had entered into a valid compromise agreement. Consolidated Amusement Co. v. Waikiki Business Plaza, Inc., 6 Haw. App. 312, 719 P.2d 1119 (1986). If not, the lower court should have either set the case for trial or at least held an evidentiary hearing on whether there was a compromise agreement among the parties.
Id., 9 Haw. App. at 64-65, 828 P.2d at 292.[15]
The trial court can approve a compromise agreement where the record shows the essential elements of a contract, and such a contract "cannot be set aside except on the grounds that would justify rescission." Mijo, 87 Hawai'i at 28-29, 950 P.2d at 1228-29 (emphasis removed). "Generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it." Id. at 29, 950 P.2d at 1229. "To determine the validity of the settlement agreement, the court looks to the totality of the circumstances surrounding the making of the agreement." Id. (internal quotation marks omitted).

1. Han's attorney lacked clear specific authority to enter into settlement on her behalf.
In this case, whether Han entered into an agreement with Kang and CBCPP was disputed. In her motion to vacate the settlement, Han admits that she agreed to the monetary settlement value, but argues that she never agreed to the additional terms in the Settlement Agreement. Thus, the issue becomes whether Han's authorization to settle included the terms she contests on appeal.
In its October 18, 2005 order (the October 18 Order), the circuit court found that Han "had authorized Mr. Phillips to settle the case based on certain terms that were placed on the record on May 6, 2005." Han said Phillips's actions entering the settlement on the record were unauthorized. Han claimed Phillips's actions were "contrary to [Han's] explicit instructions before the May 6 telephone Settlement Hearing[,]" yet she provides no explanation of what her explicit instructions to Phillips were. Han denies that she gave Phillips the authority to settle her case on the terms as recorded at the May 6, 2005 conference. Han further argues that Phillips had not fulfilled the provisions of HRS § 605-7 prior to recording the settlement.
HRS § 605-7 requires express written consent of the client to enter into a settlement. See Cook v. Surety Life Ins., Co., 79 Hawai'i 403, 409, 903 P.2d 708, 714 (App. 1995) (citing Hawai'i Housing Auth. v. Uyehara, 77 Hawai'i 144, 150, 883 P.2d 65, 71 (1994)). "The statute is consistent with the general legal proposition that `an attorney has no power by virtue of his [or her] general retainer, to compromise his [or her] client's cause of action[.]'" Id., 79 Hawai'i at 409, 903 P.2d at 714 (quoting McKeague v. Freitas, 40 Haw. 108, 112-13 (1953)). HRS § 605-7 establishes a "bright line" rule, "plainly intended to restrict such authority, to remove all doubt from its exercise, and to establish that a client's direction, in this area, is paramount." Id. at 412, 903 P.2d at 717. Cook puts the onus on the attorney to obtain such proof of authority. Id.
At the hearing on the settlement motions, the circuit court asked Phillips to show Han's consent to settle her claims. Phillips provided a copy of a lined piece of paper with handwritten notes, which he claimed he had requested "to signify that she was authorizing me to accept a settlement offer in this matter." The paper had five handwritten dollar amounts, two percentages, and Han's signature; there are no words on the paper. Additional markings, including arrows and circles, add to the ambiguity over what the paper actually signifies. The dollar amount at the top of the page  $85,000  is crossed out. The amount of the Defendants' initial offer ($20,000), Han's counter-offer ($60,000), and $50,000 are circled. The value of the settlement as stated in the final draft of the settlement agreement ($40,000) has no markings.
Han admits on appeal to signing the paper but says "[t]here was no attempt to show or explain the innocuous scrap of paper." Han suggests that when "[t]he Court requested that Mr. Phillips file with the court the written authorization for the settlement of May 6, 2005, there is not one, so he filed the prior authorization for $60,000." Phillips's declaration to the circuit court does not state whether Han's signature was obtained before or after he told her of the $40,000 counter-offer. The markings and inconsistencies between Phillips's and Han's stories create substantial doubt over whether Han gave Phillips the special authority to settle as required by HRS § 605-7.
The circuit court, however, does not mention the piece of paper in its October 18 Order to enforce the $40,000 settlement. Rather, the circuit court found that "[Han's] motion [to vacate settlement] admits in writing that Mr. Phillips was authorized to place that settlement on the record." This finding, however, misstates Han's motion, which instead reads: "After [Han] accepted Defendants' small settlement offer on May 6, 2005, in accordance with the instructions of the Court to Plaintiff's Counsel, Defendants then refused to pay as agreed." As this is the sole basis on which the circuit court established that Phillips had the authority to settle his client's case, the circuit court's finding is clearly erroneous.

2. Han did not ratify the terms of the settlement placed on the record.
The adequacy of the written authority proffered by Phillips is not dispositive of the validity of the Settlement Agreement. A settlement can be valid and binding on a client even if the attorney was not granted special authority to enter it, so long as the client later ratifies the settlement. See Cook, 79 Hawai'i at 409, 903 P.2d at 714, quoting McKeague v. Freitas, 40 Haw. 108, 113 (1953) ("[P]recedent special authority or subsequent ratification is necessary to make such a compromise valid and binding on the client.") (internal quotation marks omitted). Assuming that Han did not expressly authorize Phillips to agree to a settlement, the issue remains whether she ratified the acceptance of the Defendants' settlement offer by her subsequent actions.
"[R]atification may be express or it may be implied from circumstances; whether or not the circumstances warrant the implication of ratification must of course depend upon the facts of each particular case." Id. at 411, 903 P.2d at 716 (quoting Scott v. Pilipo, 25 Haw. 386, 390 (1920) (internal quotation marks omitted)). A client may ratify a settlement by acquiescing to an attorney's actions and failing to make a timely objection to the agreement. Id. (citing Nelson v. Boone, 78 Hawai'i 76, 84, 890 P.2d 313, 321 (1995)). A client may also ratify an unauthorized settlement by voluntarily accepting the benefits of the settlement. See McKeague v. Freitas, 40 Haw. 108, 113 (1953). As a general rule, "ratification cannot take place until the party ratifying is in possession of the full facts." Broecker v. Moxley, 28 P.2d 409, 411 (Cal. Dist. Ct. App. 1934).
In this case, Han could not have ratified the Settlement Agreement. First, Han did not have the full facts regarding the settlement because the language regarding material terms of the settlement did not exist when Han filed her motion to vacate. Second, by filing a motion to vacate the settlement as the attorneys negotiated the language of the settlement, Han objected to the agreement in a timely matter. Cf. Nelson, 78 Hawai'i at 83-83, 890 P.2d at 323-24 (objection not timely when it came in a deposition more than four years following agreement). Lastly, Han did not reap the benefit of the settlement because Defendants did not deposit monies into an account for Han until December 22, 2005, after she challenged the validity of the settlement.
Defendants argue Han repeatedly voiced her acceptance of the agreement. They point to Han's admission in her motion to vacate settlement,[16] and to the October 10, 2005 affidavit of Robert Hanna, who was present when Phillips discussed settlement offers with Han. At most, these documents establish that Han ratified Phillips's action of agreeing to a $40,000 settlement.
In the same documents that reflects Han accepted the monetary value of the settlement, Han objected to other terms of the settlement. In her motion to vacate, Han objected to "[s]ome of the said representations and agreements Defendants sought unilaterally in bad faith to impose on the Plaintiff . . . . " Han argues on appeal that the Settlement Agreement contains "additional obligations and liabilities plus false covenants of explanation and understanding, and other legalese never contemplated [or] discussed . . . ." Han does not specify objectionable provisions in her opening brief, but in her reply brief objects to the scope of the indemnity clauses and releases and the inclusion of CBREC as third-party beneficiary.
Even if we accept Han's statements as ratifying Phillips's acceptance of the $40,000 offer, we cannot conclude, as the circuit court did, that Han ratified all the terms that Phillips placed on the record. "A ratification is not effective unless it encompasses the entirety of an act, contract, or other single transaction." Restatement (Third) of Contracts § 4.07 (2006). Partial ratification has been generally rejected because a person who ratifies an act should not "obtain its economic benefits without bearing the legal consequences . . . ." Restatement (Third) of Contracts § 4.07 cmt. b (2006). To allow Han to accept, even begrudgingly, the monetary value of the settlement while decrying the obligations to indemnify the Defendants and keep the terms of the settlement confidential would be unfair. Conversely, to allow Defendants to add parties and terms favorable to them while limiting Han to the money damages they previously agreed to pay would also be unfair.

VI. Conclusion
We vacate the March 8, 2006 final judgment of the Circuit Court of the First Circuit and remand the case for further proceedings consistent with this memorandum opinion.
NOTES
[1] The Honorable Sabrina S. McKenna presided.
[2] HRS Chapter 415B was repealed in 2001; current provisions are found in HRS Chapter 414D (2004). See Hawaii Nonprofit Corporations Act, HRS Chapter 414D. The subject matter of this statute is not relevant to Han's claims on appeal. The circuit court granted partial summary judgment in favor of CBCPP on this issue on January 10, 2005.
[3] The attorney hired by Han to obtain her liquor license and to write her business plan testified in depositions that in his opinion the Discovery Bay apartment owners' association would oppose a hostess bar license if Han had applied for one. Han challenges on appeal a circuit court ruling to limit his testimony. See Part D, infra.
[4] Phillips is the fourth attorney of record for Han.
[5] Hanna signed Han's initial complaint and continued to advise Han throughout the course of this case, although he formally withdrew from the case on July 19, 2003.
[6] In finding that Han agreed to the settlement, the circuit court appears to have relied on this language from Han's Motion to Enforce Settlement: "After Plaintiff accepted Defendants' small settlement offer on May 6, 2005, in accordance with the instructions of the Court to Plaintiff's Counsel, Defendants then refused to pay as agreed." (Emphasis removed.)
[7] The settlement agreement provides this release:

Han, on behalf of herself and the Oasis Bistro, Ltd. and the Chairman, Ltd., and for her or their respective directors, officers, shareholders, members, parent corporations, subsidiary corporations, partners, partnerships, agents, representatives, employees, associates, heirs, spouses, children, issue, estates, beneficiaries, executors, administrators, predecessors, successors, assigns, and each of them, past and present, and all those who may claim, through or under them, hereby acknowledge full and complete satisfaction of, and hereby generally and specifically release and acquit and forever discharge Kang, CBCPP, and CBREC, and each of their respective insurers, subsidiaries parent corporations, related entities, franchisors, franchisees, officers, directors, shareholders, members, partners, partnerships, agents, independent contractors, heirs, spouses, children, issue, estates, beneficiaries, executors, administrators, predecessors, successors, assigns, attorneys, and each of them, past and present, from any and all claims, causes of action, accounts, contentions, allegations, demands, damages, debts, liabilities, reckonings, obligations, promises, costs, attorneys' fees, expenses, liens, injuries and losses of every kind and nature whatsoever, which now exist or which may arise in the future, and whether based upon contract, tort, statute, or other legal or equitable theory of recovery whether now known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, based upon, arising out of or in connection with any matters, acts, events, conduct or occurrences whatsoever, or whenever time occurring prior to the date of this Agreement, including without limitation on the generality and all encompassing scope of this release, any and all matters that arise out of or are in any way connected to or related to: (1) the events, transactions, occurrences, acts, errors, or omissions set forth, alleged in or which form the subject matter of the pleadings, proposed pleadings and documents in the Lawsuit; (2) the Oasis Bistro, Ltd.; (3) the Chairman, Ltd.; (4) the Discovery Bay Space; (5) the space in the building formerly known as Ginza West; (6) the space located on Ward Avenue, Honolulu, Hawaii, that Kang and Han looked at prior to Han entering into a lease for the Discovery Bay Space; (7) Han applying for and/or obtaining a liquor license; (8) the loan(s) to Han from Kyungi Han; (9) the loan(s) to Han from Sun Ok Han; (10) the loan to Han by GE Capital, and guaranteed by Sun Ok Han, for office equipment, including but not limited to a computer, printer and copy machine; and (11) any remodeling work on the Discovery Bay Space.
[8] Han's Opening Brief does not conform with the following relevant sections of HRAP Rule 28(b)(4):

Within 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing the following sections in the order here indicated:
. . . .
(3) A concise statement of the case, setting forth the nature of the case, the course and disposition of proceedings in the court or agency appealed from, and the facts material to consideration of the questions and points presented, with record references supporting each statement of fact or mention of court or agency proceedings. In presenting those material facts, all supporting and contradictory evidence shall be presented in summary fashion, with appropriate record references. Record references shall include page citations and the volume number, if applicable. . . . There shall be appended to the brief a copy of the judgment, decree, findings of fact and conclusions of law, order, opinion or decision relevant to any point on appeal, unless otherwise ordered by the court.
(4) A concise statement of the points of error set forth in separately numbered paragraphs. Each point shall state: (i) the alleged error committed by the court or agency; (ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency. Where applicable, each point shall also include the following:
(A) when the point involves the admission or rejection of evidence, a quotation of the grounds urged for the objection and the full substance of the evidence admitted or rejected;
. . . .
(C) when the point involves a finding or conclusion of the court or agency, either a quotation of the finding or conclusion urged as error or reference to appended findings and conclusions[.]
[9] According to Han, Larue was the person who introduced Han to Kang and knew that Han planned to open a hostess bar.
[10] An unfiled transcript of the April 25, 2005 hearing was attached to Han's Opening Brief as Exhibit 22. As is the case with several of Han's other points on appeal, Han attaches copies of transcripts that have not been included in the record on appeal as exhibits to her opening brief. Pursuant to HRAP Rule 28(b)(10), such practice is prohibited. See also Orso v. City & County of Honolulu, 55 Haw. 37, 514 p.2d 859 (1973) (matters outside the record on appeal may neither be appended nor referred to in appellate brief.
[11] HRAP Rule 10(b)(1)(A) reads:

When an appellant desires to raise any point on appeal that requires consideration of the oral proceedings before the court or agency appealed from, the appellant shall file with the clerk of the court appealed from, within 10 days after filing the notice of appeal, a request or requests to prepare a reporter's transcript of such parts of the proceedings as the appellant deems necessary that are not already on file.
[12] HRAP Rule 10(f) reads:

(f) Request for findings of fact and conclusions of law. In all actions where the court appealed from is not required to enter findings of fact and conclusions of law prior to the entry of an order, judgment, or decree, but is required to do so once a notice of appeal is filed, the appellant shall, no later than 10 days after filing the notice of appeal, file in the court appealed from a request for entry of findings of fact and conclusions of law, naming the judge who tried the action and entered the order, judgment, or decree being appealed. The named judge shall enter the requested findings of fact and conclusions of law within 28 days after the request has been filed. To aid the court, the court may order the parties or either of them to submit proposed findings of fact and conclusions of law after the filing of the request.
[13] At the time, Han was represented by Lee Miki.
[14] Conversely, Defendants twice requested HRCP Rule 11 sanctions and once requested sanctions under HRCP Rule 30(d)(3) and 37(d). Sanctions against Han were granted for failure to timely notify Defendants that she was cancelling a deposition.
[15] The circuit court did not hold an evidentiary hearing. The circuit court took sworn affidavits from Han and Hanna. No additional testimony was taken.
[16] Han's motion states: "After [Han] accepted Defendants' small settlement offer on May 6, 2005, in accordance with the instructions of the Court to Plaintiff's Counsel, Defendants then refused to pay as agreed."